**Dated: July 12, 2019**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| In re | Chapter 11 |
| WHITE STAR PETROLEUM HOLDINGS, LLC, *et al.*,[1] | Case No. 19-12521-JDL |
| Debtors. | Jointly Administered |

**ORDER (A) APPROVING BID PROCEDURES FOR SALE OF
DEBTORS' ASSETS, (B) APPROVING STALKING HORSE
BID PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND
HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (D) APPROVING FORM
AND MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING
<u>AND (E) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES</u>**

---

[1]     The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("<u>WSTR Holdings</u>"), White Star Petroleum, LLC (0977) ("<u>WSTR</u>"), White Star Petroleum II, LLC (4347) ("<u>WSTR II</u>"), White Star Petroleum Operating, LLC (5387) ("<u>WSTR Operating</u>") and WSP Finance Corporation (9152) ("<u>WSP Finance</u>" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "<u>Debtors</u>").  The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

Upon the motion (the "Motion")[2] of White Star Petroleum Holdings, LLC and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Bid Procedures Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Bankruptcy Rules, and Local Bankruptcy Rules 2002-1, 6004-1, 6006-1 and 9006-1, (a) approving the Bid Procedures, substantially in the form attached hereto as Exhibit 1, (b) authorizing the Debtors to grant the Bid Protections in accordance with the terms and conditions set forth in the Bid Procedures, (c) scheduling the Auction and the Sale Hearing, (d) approving the form and manner of notices of sale, Auction and Sale Hearing and (e) approving the Assumption and Assignment Procedures; and the Court having reviewed and considered the Motion; and the Court having held a hearing on the Motion (the "Bid Procedures Hearing"); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and rule 81.4(a) of the Local Civil Rules of the United States District Court for the Western District of Oklahoma.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and this Court may issue a final order on the Motion consistent with Article III of the United States Constitution.

B.      The Debtors' proposed notice of the Motion, the Bid Procedures, the Bid Procedures Hearing and the proposed entry of this Bid Procedures Order is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in

---

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules and (iii) adequate and sufficient under the circumstances of the chapter 11 cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Bid Procedures Order has been afforded to all interested persons and entities, including, but not limited to, the Sale Notice Parties.

C.     The Bid Procedures are fair, reasonable and appropriate.  The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Bid Procedures Order and such compelling and sound business justification, which was set forth in the Motion and on the record at the Bid Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

1.     If the Debtors enter into one or more stalking horse purchase agreement(s) with Stalking Horse Bidder(s) and grant to such Stalking Horse Bidder(s) the Bid Protections (including a break-up fee and expense reimbursement amount) on the conditions set forth in the Bid Procedures, such Bid Protections will be (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets, (iii) commensurate with the real and substantial benefits conferred upon the Debtors' estates and stakeholders and all parties in interest by the Stalking Horse Bidder(s), (iv) a material inducement for, and conditions necessary to, ensure that the Stalking Horse Bidder(s) will continue to pursue its/their proposed

agreement to purchase the Assets and (v) fair, reasonable and appropriate in light of the size and nature of the sale, the commitments that have been made, the efforts that have been and will be expended by the Stalking Horse Bidder(s), and the Stalking Horse Bidder(s)'s lost opportunities resulting from the time spent pursuing such transaction.

D.    The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bid Procedures Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties-in-interest.

E.    The Bid Procedures comply with the requirements of Local Bankruptcy Rule 6004-(1).

F.    The form and manner of notices to be delivered pursuant to the Noticing Procedures, including the Sale Notice attached hereto as Exhibit 2, are (i) reasonably calculated to provide all interested parties with timely and proper notice; (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules and (iii) adequate and sufficient under the circumstances of the chapter 11 cases.

G.    The Assumption and Assignment Procedures and the Initial Assignment Notice, attached hereto as Exhibit 3, comply with the requirements of Local Bankruptcy Rule 6006-1, and are reasonably calculated to provide each Counterparty to the Assumed Debtor Contracts with proper notice of (a) the potential assumption and assignment of such Assumed Debtor Contracts by the Successful Bidder(s) and (b) the requirement that each such Counterparty assert any objection to the proposed Cure Amount prior to the Contract Objection Deadline or otherwise be barred from asserting claims arising from events occurring following assumption and assignment of such Assumed Debtor Contracts.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.       The relief requested in the Motion is hereby granted to the extent set forth herein.

2.       <u>Objections</u>.  All objections to the Motion solely as it relates to the relief granted by this Bid Procedures Order that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

3.       <u>Bid Procedures</u>.  The Bid Procedures are approved and fully incorporated into this Bid Procedures Order.  The Debtors are authorized, but not directed, to solicit, qualify and accept bids in conformity with the Bid Procedures, to exclude late bids or bids that do not comply with the Bid Procedures, and otherwise to act in accordance therewith.

4.       <u>Noticing Procedures</u>.  The Noticing Procedures as set forth in this Bid Procedures Order and the Motion, including the form of Sale Notice attached hereto as <u>Exhibit 2</u>, are hereby approved.  Within five business days after entry of this Bid Procedures Order, or as soon as reasonably practicable thereafter, the Debtors are authorized to serve the Sale Notice by first-class mail upon the Sale Notice Parties.  On or about the same date, the Debtors are authorized to publish the Sale Notice on the Case Information Website.  Service of the Sale Notice on the Sale Notice Parties and publication thereof in the manner described in the Bid Procedures Order constitutes good and sufficient notice of the Auction, the Sale Hearing and the Debtors' proposed sale of the Debtors' assets free and clear of liens, claims, interests and encumbrances, pursuant to Bankruptcy Code section 363(f).  No other or further notice is required.

5.       <u>Bid Deadlines</u>.  Preliminary Bids must be received by **12:00 p.m. (Central Daylight Time) on July 17, 2019**, and Required Bid Documents must be received

by **12:00 p.m. (Central Daylight Time) on August 20, 2019**; provided that the Debtors may extend the Preliminary Bid Deadline or the Bid Deadline without further order of the Court.

      6.     <u>Stalking Horse Protections</u>. At any time after the Preliminary Bid Deadline and prior to the Auction, the Debtors are authorized to agree to pay the Stalking Horse Bidder a cash break-up fee equal to up to 3.0% of the value of the consideration to be paid by the Stalking Horse Bidder and may further agree to reimburse the reasonable expenses of the Stalking Horse Bidder in an amount up to $250,000 (together, the "<u>Bid Protections</u>"); provided that if the Stalking Horse Bid has not been approved by each of the DIP Agent and the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), either the DIP Agent or the Committee, as applicable, may object to such Bid Protections within seven calendar days after notice of the selection of the Stalking Horse Bid.  If such a timely objection to the Bid Protections is filed, the Debtors shall schedule a hearing as soon as reasonably practical seeking approval of the Bid Protections.  If there is no such objection to the Bid Protections prior to such objection deadline, the Bid Protections will be authorized hereby, and may be paid, without further action or order by the Court.  Any such Bid Protections which are agreed for the benefit of a Stalking Horse Bidder in accordance herewith shall constitute allowed superpriority administrative expense claims arising in the Debtors' chapter 11 cases under sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code.

      7.     <u>Credit Bid</u>.  The Secured Parties shall be entitled to credit bid some or all of their claims at the Auction pursuant to section 363(k) of the Bankruptcy Code only in accordance with the Bid Procedures.  Any credit bid that fails to comply with the Bid Procedures is hereby excluded for cause absent further order of the Court.

8.      Auction.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids, the Debtors are authorized to conduct an Auction in accordance with the Bid Procedures.

9.      Cancellation of Auction.  If the Debtors receive no more than one Qualified Bid on or prior to the Bid Deadline with respect to any Asset(s), the Debtors are authorized to cancel the Auction and seek approval of the sole Qualified Bid.

10.      Sale Objections.  Objections to the sale must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than seven days prior to the Sale Hearing at 4:00 p.m. (Central Daylight Time) and (d) be served upon each of the following: (i) the Honorable Janice D. Loyd, United States Bankruptcy Judge; (ii) the Office of the United States Trustee for the Western District of Oklahoma; (iii) proposed counsel to the Debtors; (iv) counsel to the agent of the Debtors' prepetition first lien lenders; (v) counsel to the Debtors' prepetition second lien lender; (vi) counsel to the DIP Agent; (vii) counsel to the Committee; (viii) all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (ix) any party that has appeared in the involuntary proceeding pending against White Star Petroleum, LLC (collectively, the "Objection Notice Parties") so as to be actually received no later than the Sale Objection Deadline.

11.      Sale Hearing.  The Sale Hearing shall be held in the United States Bankruptcy Court for the Western District of Oklahoma, 2nd Floor Courtroom, 215 Dean A. McGee Avenue, Oklahoma City, OK 73103, on **September 12, 2019** at **9:30 a.m. (Central Daylight Time)** or such other date and time to be determined by the Debtors; provided, however, that the Sale Hearing may be continued, accelerated or adjourned by the Debtors by an announcement at a hearing before this Court or by filing a notice on this Court's docket.

12.    <u>Assumption and Assignment Procedures</u>.  The following assumption and assignment procedures (the "<u>Assumption and Assignment Procedures</u>") are hereby approved:

a.    Following the Bid Deadline, the Debtors are authorized to file with the Court and serve by first-class mail a notice (the "<u>Initial Assignment Notice</u>") on each counterparty (a "<u>Counterparty</u>") to those certain executory contracts and unexpired leases that the Debtors wish to assume and assign in connection with the sale (each, an "<u>Assumed Contract</u>").

b.    The Initial Assignment Notice served on a Counterparty shall (i) identify each Assumed Contract then applicable to such Counterparty, (ii) set forth the proposed amount (the "<u>Cure Amount</u>") necessary to cure any default under the relevant Assumed Contract pursuant to section 365 of the Bankruptcy Code and (iii) inform such Counterparty of the requirement to file and duly serve any Contract Objections (as defined below) no later than the Sale Objection Deadline.

c.    If, following service of the Initial Assignment Notice, the Debtors identify additional executory contracts and unexpired leases for assumption and assignment in connection with the sale ("<u>Additional Assumed Contracts</u>," and together with the Assumed Contracts, the "<u>Assumed Debtor Contracts</u>"), the Debtors are authorized to file with the Court and serve by first-class mail a notice (a "<u>Further Assignment Notice</u>," and together with the Initial Assignment Notice, the "<u>Contract Notices</u>") on each Counterparty to the Additional Assumed Contracts.  Further Assignment Notices shall contain the same information as the Initial Assignment Notice.  The Counterparty shall have the later of (i) the Sale Objection Deadline and (ii) seven days following delivery of a Further Assignment Notice (together with the Sale Objection Deadline (only with respect to Contract Objections), the "<u>Contract Objection Deadlines</u>") to file and duly serve a Contract Objection.  Further Assignment Notices may be filed and served at any time up to the thirtieth day following the closing of the sale.

d.    Service of the Contract Notices shall not constitute an admission that an Assumed Debtor Contract is an executory contract or unexpired lease of real property, and shall not require the Debtors to assume and assign such Assumed Debtor Contract.

e.    Objections (the "<u>Contract Objections</u>"), if any, to (a) the proposed Cure Amount, (b) the proposed assumption and assignment of the Assumed Debtor Contracts, (c) the adequate assurance of future performance or (d) whether applicable law excuses a Counterparty

from accepting performance by, or rendering performance to, the Successful Bidder must (i) be in writing; (ii) state with specificity the nature of such objection and, if disputed, the alleged Cure Amount and any and all defaults that must be cured or satisfied in order for such Assumed Debtor Contract to be assumed and assigned (with appropriate documentation in support thereof); (iii) comply with the terms of these Assumption and Assignment Procedures, the Bankruptcy Rules and the Local Bankruptcy Rules; and (iv) be filed with the Court and properly served on the Objection Notice Parties.

f.      The Debtors may extend the Contract Objection Deadlines one or more times without further notice.

g.      If no objections are received by the applicable Contract Objection Deadline with respect to an Assumed Debtor Contract, the assumption and assignment of such Assumed Debtor Contract shall be deemed authorized and the proposed Cure Amount shall be binding on the applicable Counterparty for all purposes and will constitute a final determination of the total Cure Amount required to be paid in connection with the assumption and assignment of such contract.  The Debtors are authorized to then submit to the Court a form of order (an "Approval Order") authorizing the assumption and assignment of such Assumed Debtor Contract. Upon entry of an Approval Order with respect to the assumption and assignment of an Assumed Debtor Contract, any and all previously filed Contract Objections with respect thereto shall be deemed resolved.

h.      Any Counterparty who fails to timely file and properly serve a Contract Objection (i) shall be deemed to have forever waived and released any Contract Objection and consented to the assumption and assignment of such Assumed Debtor Contract on the terms set forth in the applicable Contract Notice, subject to occurrence of the closing of the sale, and (ii) shall be barred and estopped forever from asserting or claiming against the Debtors or the Successful Bidder that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assumed Debtor Contract.

i.      If a Contract Objection is timely filed and properly served in accordance with these Assumption and Assignment Procedures, the Debtors and the Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention (the "Resolution Procedures").  If the parties determine that the Contract Objection cannot be resolved in a timely manner without judicial intervention, the Court shall make

all necessary determinations relating to such Contract Objection at the applicable Contract Hearing (as defined below).

j.    A hearing with respect to Contract Objections to the Initial Assignment Notice shall be held at the Sale Hearing or at such other earlier or later date prior to the closing of the sale as the Court may designate (the "Initial Contract Hearing"). Hearings with respect to Contract Objections to any Further Assignment Notices may be held on such dates as this Court may designate (each an "Additional Contract Hearing," and together with the Initial Contract Hearing, each a "Contract Hearing"). Any Assumed Debtor Contract that is the subject of a Contract Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to the resolution of such objection. If the Court determines at such a hearing that a particular Assumed Debtor Contract cannot be assumed and assigned for any reason, then such Assumed Debtor Contract shall no longer be considered an Assumed Debtor Contract.

13.    No Interested Party or Potential Bidder, other than the Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination fee or other similar fee or payment in connection with the sale or any other form of bid protections. No Interested Party or Potential Bidder, in such capacity, shall be a beneficiary of or have a right to enforce the Bid Procedures or this Bid Procedures Order, except, in each case, as the Debtors may agree in writing in connection with a Stalking Horse Bid.

14.    All persons or entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bid Procedures and the Auction.

15.    The Debtors are authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Bid Procedures Order. References in this Bid Procedures Order to the Bid

Procedures include such modifications that may be made to the Bid Procedures from time to time by the Debtors in accordance with section 14 thereof.

16.     All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.     The requirements set forth in Local Bankruptcy Rule 9013-1(a) are satisfied.

18.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

19.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied. This Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.  This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

IT IS SO ORDERED.

###

Approved for entry:

*/s/ John D. Dale*
John D. Dale, OBA No. 19787
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: jdale@gablelaw.com

-and-

*/s/ Craig M. Regens*

Craig M. Regens, OBA No. 22894
GABLEGOTWALS
One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 568-3313
Facsimile: (405) 235-2875
cregens@gablelaw.com

-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Co-Counsel to White Star*

# **EXHIBIT 1**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re | Chapter 11 |
| WHITE STAR PETROLEUM HOLDINGS, LLC, *et al.*,[1] | Case No. 19-12521-JDL |
| Debtors. | Jointly Administered |

## BID PROCEDURES

The above-captioned debtors-in-possession (the "Debtors") in jointly administered chapter 11 cases currently pending in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court") are authorized to solicit bids for and conduct a sale of all or substantially all of their assets (the "Assets") pursuant to the following procedures (the "Bid Procedures"). The sale of the Assets will be accomplished either through a chapter 11 plan or a sale pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), as the Debtors and the Successful Bidder(s) (as defined below) may agree.

Any interested bidder should contact, as soon as practical:

**Guggenheim Securities, LLC**
330 Madison Avenue
New York, NY 10017
Attn: Morgan Suckow, Ajay Bijoor and Jeremy Griggs
Phone: (212) 378-2874
(713) 300-1337
Email: Morgan.Suckow@guggenheimpartners.com
Ajay.Bijoor@guggenheimpartners.com
Jeremy.Griggs@guggenheimpartners.com

These Bid Procedures describe, among other things, (i) certain requirements for bidders who wish to receive confidential information about the Debtors for purposes of submitting bids, (ii) the manner in which bidders and bids may become qualified to participate in

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors"). The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

the Auction (as defined below), (iii) procedures for the approval by the Bankruptcy Court of certain protections that may be granted to one or more 'stalking horse' bidders, (iv) procedures for conduct of the sale process and a competitive auction, if necessary, (v) procedures for the selection of one or more winning bidders and alternate bidders and (vi) procedures for Bankruptcy Court approval of the sale.

## 1.     Participation Requirements

### (a)     Interested Parties

Unless otherwise ordered by the Bankruptcy Court for cause shown, the Debtors may require any person or entity interested in participating in the sale process (an "Interested Party") to deliver the following documents (the "Preliminary Bid Documents") to the Debtors' proposed investment banker in these chapter 11 cases, Guggenheim Securities, LLC ("Guggenheim Securities"):

(i)     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(ii)     a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Interested Party has a *bona fide* interest in purchasing any or all of the Assets and is likely to be able to submit a Qualified Bid (as defined below) by the Bid Deadline (as defined below);

(iii)     a description of any connections between (A) the Interested Party and its affiliates and related persons and (B) the Debtors and their primary creditors as identified by the Debtors;

(iv)     the most current audited and unaudited financial statements of the Interested Party or any equity holder or sponsor of the Interested Party that will be responsible to the Debtors for the Interested Party's obligations in connection with the bidding process; and

(v)     such other information as the Debtors may determine to be appropriate to assess whether the Interested Party is an appropriate recipient of confidential information of the Debtors.

### (b)     Due Diligence

An Interested Party shall become a potential bidder (a "Potential Bidder") entitled to access information from the confidential electronic data room established by the Debtors concerning the sale of the Assets (the "Data Room") when so notified by the Debtors. Potential Bidders also may address additional due diligence requests to Guggenheim Securities, who will coordinate all such requests for additional information with the Debtors (or their advisors) and post new information to the Data Room from time to time.

The Debtors may withhold or limit access by any Potential Bidder to the Data Room or other due diligence materials at any time and for any reason, including, without limitation, if (i) the Potential Bidder does not become, or the Debtors determine that the Potential

Bidder is not likely to become, a Qualified Bidder (as defined below), (ii) the Potential Bidder violates the terms of its confidentiality agreement, (iii) the Debtors become aware that the information set forth on the Preliminary Bid Documents is inaccurate or misleading or of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, or (iv) the bidding process is terminated in accordance with its terms.  After the Bid Deadline, the Debtors shall have no obligation to furnish any additional due diligence to any Potential Bidder and all access to the Data Room or other diligence materials shall cease.

Each Potential Bidder will comply with all reasonable requests by the Debtors for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction.

(c)    **Form of Purchase Agreement**

The Data Room will include suggested purchase documentation for the Assets (the "Proposed Purchase Agreement") for review by Potential Bidders.

(d)    **Consulting Professionals**

The Debtors shall promptly notify the lead legal counsel and financial advisor for each of MUFG Union Bank, N.A., as administrative agent and collateral agent for the DIP Facility (as defined below) (the "DIP Agent") and the Official Committee of Unsecured Creditors (together, the "Consulting Professionals") of the Potential Bidders granted access by the Debtors and will provide updates and information about the participation of Potential Bidders in the sale process as reasonably requested by the Consulting Professionals from time to time.

2.    **Qualified Bids**

Participation in the Auction shall be limited to those Potential Bidders who satisfy the conditions set forth in "Preliminary Bid Deadline," "Bid Deadline" and "Bid Requirements" below and, after consultation with the Consulting Professionals, are deemed by the Debtors to be a "Qualified Bidder" with a timely "Qualified Bid."

(a)    **Preliminary Indications of Interest**

In order to be a Qualified Bidder, Potential Bidders first will be required to submit a non-binding indication of interest (a "Preliminary Bid") not later than 12:00 p.m. (Central Daylight Time) on July 17, 2019 (the "Preliminary Bid Deadline"), to Guggenheim Securities; provided that, after consultation with the Consulting Professionals, the Debtors may extend the Preliminary Bid Deadline without further order of the Bankruptcy Court.  If the Debtors extend the Preliminary Bid Deadline, the Debtors will promptly notify all Potential Bidders.  The Debtors will promptly provide copies of all Preliminary Bids received to the Consulting Professionals.

Each Preliminary Bid must include, except as the Debtors otherwise determine:

(i)     a letter outlining the bidder's offer and any conditions precedent and stating that the bidder is prepared to work in good faith to finalize a binding proposal by the Bid Deadline;

(ii)    written evidence acceptable to the Debtors demonstrating financial wherewithal and a description of the corporate authorizations necessary to consummate the proposed transaction;

(iii)   a description of the Assets subject to the bid and form of consideration for the Assets to be purchased, with an allocation of consideration for each of the Anadarko Assets, STACK Assets and Cherokee Assets;

(iv)    the identification of the ultimate beneficial owners of any Potential Bidder;

(v)     a description of all remaining due diligence requirements and any material conditions to be satisfied prior to submission of a Qualified Bid;

(vi)    a description of the material amendments and modifications of the Proposed Purchase Agreement that the Potential Bidder intends to propose;

(vii)   the identification of any person or entity who may provide debt or equity financing for the purchase and any material conditions to be satisfied in connection with such financing;

(viii)  a statement that the bidder will not seek any transaction or break-up fee, expense reimbursement or similar type of payment and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

(ix)    the identification of any executory contracts and unexpired leases of which the Potential Bidder may seek assignment from the Debtors and, if the bid contemplates the assumption and assignment of any contracts or leases, evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code;

(x)     the identification of any obligations related to employees of the Debtors the bidder may assume and whether the bidder proposes to purchase avoidance actions and other claims against continuing suppliers, vendors and counterparties of the Debtors as part of the transaction;

(xi)    the identification of all other liabilities the bidder may assume, if any; and

(xii)   confirmation that the bidder consents to the jurisdiction of the Bankruptcy Court and agrees to be bound by these Bid Procedures.

(b)     **Bid Deadline**

In order to participate in the Auction, a Potential Bidder shall deliver the Required Bid Documents (as defined below) in electronic format so as to be received not later than 12:00

p.m. (Central Daylight Time) on August 20, 2019 (the "Bid Deadline"), to Guggenheim Securities; provided that, after consultation with the Consulting Professionals, the Debtors may extend the Bid Deadline without further order of the Bankruptcy Court.  Potential Bidders may submit the Required Bid Documents, and become Qualified Bidders, at any time after the Preliminary Bid Deadline and prior to the Bid Deadline (provided such Potential Bidder has submitted a Preliminary Bid on or prior to the Preliminary Bid Deadline).  If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders.  The Debtors will promptly provide copies of all bids received to the Consulting Professionals.

      (c)     **Bid Requirements**

      All bids should include the following, except as the Debtors otherwise determine (the "Required Bid Documents"):

      (i)     a letter outlining the bidder's offer and any conditions precedent and stating that the bidder's offer is irrevocable until the 10th day following the conclusion of the Auction or, if later, September 12, 2019;

      (ii)     written evidence acceptable to the Debtors demonstrating financial wherewithal and corporate authorization to consummate the proposed transaction; and

      (iii)     a duly authorized and executed purchase agreement, including the purchase price for the Assets to be purchased, together with all exhibits and schedules, marked to show any amendments and modifications to the Proposed Purchase Agreement.

In addition, a bid will be considered a Qualified Bid only if the bid:

      (iv)     identifies the Assets subject to the bid and form of consideration for the Assets to be purchased, with an allocation of consideration for each of the Anadarko Assets, STACK Assets and Cherokee Assets;

      (v)     includes the purchase of either (i) substantially all of the Assets or (ii) substantially all of the Assets in one or more of (A) the Anadarko Assets, (B) the STACK Assets[2] or (C) the Cherokee Assets as outlined in the map below;

---

[2]    Includes Assets depicted as Other as indicated on the map below.



(vi)     sets forth the identification of the ultimate beneficial owners of any Potential Bidder;

(vii)    describes all conditions to the bid including the need for any third-party approvals or consents, except required Bankruptcy Court approval (for the avoidance of doubt, the bid cannot be conditioned on obtaining financing);

(viii)   confirms that the bidder completed due diligence and obtained necessary corporate, stockholder or internal approval;

(ix)     identifies any person or entity providing debt or equity financing for the purchase;

(x)      provides for the closing of the transaction by no later than November 1, 2019;

(xi)     is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors in cash in an amount equal to 10% of the total consideration set forth in connection with such bid;

(xii)    sets forth the representatives who are authorized to appear and act on behalf of the bidder;

(xiii)   indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement or similar type of payment and that it waives any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

(xiv)  constitutes a good faith, bona fide offer to effectuate the proposed transaction;

(xv)  identifies any executory contracts and unexpired leases of which the Potential Bidder seeks assignment from the Debtors and, if the bid contemplates the assumption and assignment of any contracts or leases, includes evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code;

(xvi)  identifies the extent to which the Potential Bidder intends to assume obligations related to employees of the Debtors and whether the Potential Bidder proposes to purchase avoidance actions and other claims against continuing suppliers, vendors and counterparties of the Debtors as part of the transaction;

(xvii)  identifies all other liabilities the bidder will assume, if any;

(xviii)  confirms that the bidder consents to the jurisdiction of the Bankruptcy Court and agrees to be bound by these Bid Procedures, including the willingness to serve as an Alternate Bidder (as defined below), if selected as such by the Debtors; and

(xix)  is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if the Debtors confirm that it includes all of the Required Bid Documents and meets all of the above requirements; provided that, after consultation with the Consulting Professionals, the Debtors may designate any bid or combination of bids that does not meet the above requirements as Qualified Bid.

All Qualified Bids will be considered, but the Debtors reserve the right to reject any and all bids, other than a credit bid made as of right under the Bankruptcy Code, that would otherwise constitute Qualified Bids after consultation with the Consulting Professionals. If any bid is so determined by the Debtors not to be a Qualified Bid, the Debtors shall promptly instruct the escrow agent designated by the Debtors to return such bidder's Good Faith Deposit (as defined below).

Each bidder also shall be deemed to acknowledge and represent, by submission of its bid, that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of its bid prior to making any such bid; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; that it did not rely upon any of the Debtors' or Guggenheim Securities', or any of their respective representatives', written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding such Assets, or the completeness of any information provided in connection therewith by any of the Debtors or Guggenheim Securities (or any of their respective representatives); and that these Bid Procedures do not create any right of bidders to enforce or rely upon them in any manner (other than such rights as may be granted to a Stalking Horse Bidder (defined below) after Bankruptcy Court approval as discussed below).

3.       **Stalking Horse Bid Protections**

After consultation with the Consulting Professionals, the Debtors may at any time after the Preliminary Bid Deadline and prior to the Auction designate one or more Qualified Bids as a stalking horse bid (each, a "Stalking Horse Bid") and execute an asset purchase agreement with the applicable stalking horse bidder (each, a "Stalking Horse Bidder"). No bid may be a Stalking Horse Bid if it does not constitute a Qualified Bid.

Upon execution of an asset purchase agreement with a Stalking Horse Bidder, the Debtors may grant such Stalking Horse Bidder a cash break-up fee equal to up to 3.0% of the value of the consideration to be paid by the Stalking Horse Bidder and may further agree to reimburse the reasonable expenses of the Stalking Horse Bidder in an amount up to $250,000 (together, the "Bid Protections"). The Debtors will provide notice of each such Stalking Horse Bidder, Bid Protections and asset purchase agreement(s) as outlined in the order entered by the Bankruptcy Court approving the Bid Procedures (the "Bid Procedures Order"). If the Stalking Horse Bid has been approved by the DIP Agent and the Official Committee of Unsecured Creditors, such Bid Protections shall be deemed approved pursuant to the Bid Procedures Order and may be paid without further action or order by the Court. If the Stalking Horse Bid has not been approved by the DIP Agent and the Official Committee of Unsecured Creditors, either (i) the DIP Agent or (ii) the Official Committee of Unsecured Creditors may object to such Bid Protections within seven calendar days after notice of the selection of the Stalking Horse Bid. If a timely objection to the Bid Protections is filed, the Debtors shall schedule a hearing as soon as reasonably practical seeking approval of the Bid Protections. If there is no objection to the Bid Protections prior to the objection deadline, the Bid Protections shall be deemed approved by the Bid Procedures Order and may be paid without further action or order by the Court. Once approved hereby, the Bid Protections shall constitute allowed superpriority administrative expense claims arising in the Debtors' chapter 11 cases under sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code.

Other than as set forth in the Bid Protections or as separately approved by the Bankruptcy Court, no party submitting a bid shall be entitled to a break-up fee or expense reimbursement. All substantial contribution claims by any bidder are deemed waived upon submission of a Qualified Bid.

4.       **Auction**

(a)       **Participants and Attendees**

In the event that the Debtors timely receive two or more Qualified Bids with respect to the Assets, the Debtors shall conduct one or more auctions (the "Auction") with respect to such Asset(s). The Auction shall be in accordance with the Bid Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids. The Auction, if held, shall be conducted at a time to be determined on August 27, 2019, at a location as designated by the Debtors in a notice filed on the docket of the Bankruptcy Court and published on the Debtors' case information website (located at http://www.kccllc.net/whitestar).

Only the Debtors, the Consulting Professionals, representatives of the Office of the United States Trustee for the Western District of Oklahoma and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing) shall be entitled to attend the Auction, along with such other persons as the Debtors may agree. No bidder other than a Qualified Bidder will be entitled to make a bid at the Auction. Each Qualified Bidder participating in the Auction must confirm that it (i) has not engaged in any collusion with respect to the bidding or the sale of any of the Assets as described herein, (ii) has reviewed, understands and accepts these Bid Procedures and any procedural rules for the conduct of the Auction described by the Debtors to the Qualified Bidders in advance of the Auction, (iii) has consented to the jurisdiction of the Bankruptcy Court and (iv) intends to consummate its Qualified Bid if it is selected as the Successful Bid (as defined below). Each Qualified Bidder participating in the Auction shall appear in person at the Auction or through a duly authorized representative.

(b)    **Auction Procedures**

At least two business days prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders and, if requested, will provide an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidders.

The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, which rules shall constitute an essential part of these Bid Procedures; provided that such rules are (i) not inconsistent with the order entered by the Bankruptcy Court approving these Bid Procedures, the Bankruptcy Code, or any other order of the Bankruptcy Court entered in connection herewith and (ii) disclosed to each Qualified Bidder. After consultation with the Consulting Professionals, the Debtors may establish at any time reasonable bonding or deposit requirements in connection with the Auction, and any bidder that fails to comply with such requirements shall cease to constitute a Qualified Bidder.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors determine that such Subsequent Bid or combination of Subsequent Bids is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). All binding bids shall be made openly, in the presence of all parties at the Auction. The Debtors may determine appropriate minimum bid increments or requirements for each round of bidding. In the event of a dispute relating to the conduct of the Auction, such dispute will be heard by the Bankruptcy Court.

After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

If the Debtors receive no more than one Qualified Bid on or prior to the Bid Deadline with respect to any Asset(s), after consultation with the Consulting Professionals, the Debtors may cancel the Auction and seek approval of the sole Qualified Bid.

For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the proposed transaction.

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid(s), all Subsequent Bid(s), the Leading Bid(s), the Alternate Bid(s) (as defined below) and the Successful Bid(s).

## 5.     Selection of Successful Bid(s)

The Debtors reserve the right to (i) determine which Qualified Bid (or combination thereof) is the highest or otherwise best as well as the appropriate criteria for this business judgment and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an offer, without liability, any bid or offer that the Debtors deem to be (A) inadequate or insufficient, (B) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (as amended), the Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of Oklahoma, or procedures set forth therein or herein, (C) not supported by the Debtors' stakeholders, (D) not consistent with the orderly winding up of the affairs of the Debtors in a manner that pays or settles all administrative expenses of the Debtors' estates in full, (E) inappropriately difficult to value or compare to other bids or (F) contrary to the best interests of the Debtors and their estates.  Any dispute regarding any of the matters set forth in this paragraph shall be resolved by the Bankruptcy Court.

Prior to the conclusion of the Auction, the Debtors will:  (i) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the transaction; (ii) identify the highest or otherwise best offer(s) (the "Successful Bid(s)"); (iii) identify the next highest or otherwise best offer(s) (the "Alternate Bid(s)") for Assets subject to the Auction; and (iv) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder(s) (the "Successful Bidder(s)"), the amount and other material terms of the Successful Bid(s) and the identity of the party or parties that submitted the Alternate Bid(s) (the "Alternate Bidder(s)").

The Debtors shall file notice of the identity of the Successful Bidder(s) at the Auction, and the amount of the Successful Bid(s), with the Bankruptcy Court within one

business day of the conclusion of the Auction and shall use reasonable efforts to obtain Bankruptcy Court approval of the Successful Bid(s).

Before the hearing to approve the sale contemplated by the Successful Bid(s) or Alternate Bid(s), the applicable Debtors shall complete and execute all agreements, instruments or other documents necessary to consummate such sale, and the Successful Bidder(s) and Alternate Bidder(s) shall deposit (if they have not done so already) by wire transfer to the Debtors in cash in an amount equal to 10% of the total consideration (respectively, a "Successful Bidder Good Faith Deposit" or "Alternate Bidder Good Faith Deposit," and together with the Stalking Horse Good Faith Deposit, the "Good Faith Deposit"), with such deposit to constitute liquidated damages if the Successful Bidder or Alternate Bidder shall default with respect to its offer. For the avoidance of doubt, the Debtors shall have no obligation to consummate the transactions contemplated by a Successful Bid(s) or Alternate Bid(s) until entry of the applicable sale order by the Bankruptcy Court in form and substance satisfactory to the Debtors in consultation with the Successful Bidder or Alternate Bidder.

## 6.    **Bids by Secured Creditors**

Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates and the right under applicable non-bankruptcy law to credit bid claims secured by such liens (including the DIP Agent) (collectively, the "Secured Parties") shall, by timely notice prior to the Bid Deadline, be entitled to credit bid some or all of their claims at the Auction pursuant to section 363(k) of the Bankruptcy Code. No other credit bids shall be permitted. If the DIP Agent or MUFG Union Bank, N.A., as administrative agent and collateral agent for the lenders under the Revolving Credit Agreement, dated as of June 30, 2016 (the "RBL Agent") shall timely submit a Qualified Bid, the DIP Agent or the RBL Agent, as applicable, shall not be required to provide a Successful Bidder Good Faith Deposit or Alternate Bidder Good Faith Deposit. Any dispute concerning the ability of a Secured Party to submit a credit bid shall be resolved by the Bankruptcy Court if the Debtors and such Secured Party cannot otherwise agree. All rights of the Secured Parties to object to the Debtors' selection of a Successful Bid(s) or Alternate Bid(s), or to object to the consummation of the sale transaction represented by either such bid, are preserved, including, without limitation, any such rights under section 363(k) of the Bankruptcy Code. To the extent the DIP Agent or the RBL Agent submits a Qualified Bid to participate at the Auction, the DIP Agent shall cease to be a Consulting Professional and the Debtors shall establish reasonable procedures to prevent the DIP Agent or its representatives from being privy to confidential information concerning the bids of other Potential Bidders for so long as the DIP Agent or the RBL Agent remain a Potential Bidder.

## 7.    **Bids by the Debtors' Prepetition Owner**

The Energy Minerals Group ("EMG") through its affiliates own a controlling equity interest in WSTR Holdings and are "insiders" of the Debtors for purposes of the Bankruptcy Code. The Debtors have been informed by EMG that EMG may be interested in participating in the sale process and the Auction as a potential purchaser, and the Debtors intend to permit such participation on the same arm's-length terms as any other party. The Debtors shall inform the Consulting Professionals reasonably prior to designating EMG as Potential Bidder or Qualified Bidder. So long as EMG is a Potential Bidder, the Debtors shall establish

reasonable procedures (i) to prevent EMG employees, including representatives on the Board of Managers, from being privy to confidential information concerning the bids of other Potential Bidders and (ii) to permit proposals by EMG to be reviewed and negotiated under the direction of representatives on the Board of Managers that are independent of EMG.

8.    **Bids for Less than All the Assets**

The Debtors may solicit and receive Qualified Bids for part but not all of the Assets.  If the Debtors receive one or more such bids, the Debtors may elect to exclude the applicable Assets from the Auction and proceed to conduct a separate sale process, form one or more consortia of Qualified Bidders to compete at the Auction or conduct multiple Auctions pursuant to these Bid Procedures.  The Debtors shall file a statement as to the treatment of any partial bids at Auction to all Qualified Bidders prior to or simultaneously with notice of the Starting Bid for the first Auction as contemplated above.  If the Debtors are conducting multiple Auctions, the Debtors may sequence the Auctions as they determine and notify Qualified Bidders at such time.

9.    **The Sale Hearing**

The hearing to consider approval of the sale of the Assets to the Successful Bidder(s) (the "Sale Hearing") will be held before the Honorable Janice D. Loyd in the United States Bankruptcy Court for the Western District of Oklahoma, 2nd Floor Courtroom, 215 Dean A. McGee Avenue, Oklahoma City, Oklahoma 73102, on a date to be determined by the Debtors.  The Sale Hearing may be accelerated or adjourned by the Debtors by an announcement of the adjourned date at a hearing before the Bankruptcy Court or by filing a notice on the Bankruptcy Court's docket.  If the Debtors do not receive any Qualified Bids, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing.  At the Sale Hearing, the Debtors will seek approval of the offer or offers constituting the Successful Bid(s) and, at the Debtors' election, the offer or offers constituting the Alternate Bid(s).

The Debtors' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court.  Following approval of a sale to a Successful Bidder, if a Successful Bidder fails to consummate such sale because of (i) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (ii) a breach or failure to perform on the part of such Successful Bidder (such bidder, the "Breaching Bidder") upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the applicable Alternate Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate the applicable sale to the applicable Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.  If such failure to consummate the sale is the result of a breach by the Successful Bidder(s) (such bidder(s), the "Breaching Bidder(s)") of its (their) purchase agreement(s), the Debtors reserve the right to seek all available remedies from the Breaching Bidder(s), subject to the terms of the applicable purchase agreement.

10.     **Highest or Otherwise Best Bid**

        Whenever these Bid Procedures refer to the highest or best offer or Qualified Bid, such determination shall take into account any factors the Debtors reasonably deem relevant to the value of the offer or Qualified Bid to the estates and may include, without limitation, the following:  (i) the amount and nature of the consideration; (ii) any liabilities or employee, vendor or supplier relationships assumed and the benefits to the Debtors' estates of such assumption; (iii) the Assets the Qualified Bidder seeks to purchase and the available options for disposing of any other Assets; (iv) the number, type and nature of any changes to the Proposed Purchase Agreement requested by the Qualified Bidder; (v) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modification or delay; (vi) the likelihood of the Qualified Bidder being able to close the proposed transaction and the timing thereof, including the cost of funds for the Debtors and their stakeholders; (vii) the reputation of the Qualified Bidder; (viii) any potential "know your customer" implications; (ix) the relative complexity of any transaction and the costs of executing such transaction and any related transactions it may require in the future; (x) the milestones, covenants and events of default arising under the Debtors' debtor-in-possession financing facility and the availability and cost of any necessary modifications; (xi) to the extent a transaction settles or otherwise avoids litigation claims by or against the Debtors' estates, the estimated likelihood of recovery on such claims, the costs of pursuing claims and the benefit of avoiding unnecessary litigation, together with all other factors that may be considered by the Debtors in assessing a settlement under rule 9019 of the Federal Rules of Bankruptcy Procedure and (xii) the net benefit to the Debtors' estates.

11.     **Return of Good Faith Deposit**

        The Good Faith Deposits of all relevant Qualified Bidders will be held in escrow by the Debtors and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement, as set forth herein or pursuant to further order of the Bankruptcy Court.  The Debtors will retain the Good Faith Deposits of the Successful Bidder and the Alternate Bidder until the closing of the applicable sales transaction unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits of the Stalking Horse Bidder or any other Qualified Bidders (if applicable) will be returned within four business days of the entry of the applicable sale order.  At the closing contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit except as otherwise provided in any agreement with respect to the sale approved by the Bankruptcy Court.  The Good Faith Deposit of the Alternate Bidder will be released by the Debtors four business days after the closing of the Successful Bid.  Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon; <u>provided</u> that the escrow agent selected by the Debtors will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Bankruptcy Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

12.     **As Is, Where Is**

        The sale of Assets pursuant to these Bid Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the

Debtors, their agents or their estates except as provided in any agreement with respect to the sale approved by the Bankruptcy Court.

13.    **Free and Clear of Any and All Interests**

Except as provided in any agreement with respect to the sale approved by the Bankruptcy Court, upon entry of the applicable sale order, all of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale with the same validity and priority as such Interests applied against the Assets purchased pursuant to these procedures, without modification of the right of the lenders under the debtor-in-possession financing facility (the "DIP Facility") to be repaid in cash from such proceeds pursuant to the final order approving the DIP Facility and all other agreements, documents, instruments and amendments executed and delivered in connection with the DIP Facility.

14.    **Reservation of Rights**

The Debtors reserve their rights to accelerate or extend the deadlines set forth in the Bid Procedures, modify bidding increments, accelerate, adjourn or cancel the Auction and/or accelerate or adjourn the Sale Hearing, as applicable, without further notice, withdraw from the Auction any or all of the Assets at any time prior to or during the Auction, cancel the sale process or Auction or, if the Debtors determine that it will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties and not be inconsistent in any material respect with any Bankruptcy Court order, modify the Bid Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets.

## **EXHIBIT 2**

**Sale Notice**

SC1:4964143.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

```
————————————————————— x
                                  :
In re                             :        Chapter 11
                                  :
WHITE STAR PETROLEUM HOLDINGS, LLC, :      Case No. 19-12521-JDL
et al.,¹                          :
                                  :        Jointly Administered
                    Debtors.      :
                                  :
————————————————————— x
```

**NOTICE OF (I) SOLICITATION OF INITIAL BIDS, (II) PROPOSED SALE OF
DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS AND INTERESTS,
(III) AUCTION AND SALE HEARING AND (IV) RELATED RELIEF AND DATES**

> **PLEASE TAKE NOTICE** that on May 28, 2019, White Star Petroleum Holdings, LLC and certain of its affiliated debtors and debtors-in-possession (together with WSTR Holdings, the "Debtors") each filed a voluntary petition for relief under of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court").

> **PLEASE TAKE FURTHER NOTICE** that on June 21, 2019, the Debtors filed the *Debtors' Restated Motion for Entry of Orders (I)(A) Approving Bid Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing and (E) Approving Assumption and Assignment Procedures and (II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases with Notice of Opportunity for Hearing and Notice of Hearing* [Doc. __] (the "Motion")² with the Bankruptcy Court seeking entry of orders, among other things, (i) scheduling an auction for (the "Auction"), and a hearing to approve, the sale of the Debtors' assets (the "Assets"), (ii) approving the sale of the Debtors' assets free and clear of liens, claims,

---

¹    The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors").  The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

²    All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

{S516602;}

interests and encumbrances and (iii) authorizing the assumption and assignment of executory contracts and unexpired leases.

**PLEASE TAKE FURTHER NOTICE** that on _____, 2019, the Bankruptcy Court entered an order (the "Bid Procedures Order") approving certain Bid Procedures (the "Bid Procedures") attached as Exhibit 1 to the Bid Procedures Order, which establish the key dates and times related to the Sale and the Auction. All interested bidders should carefully read the Bid Procedures Order and the Bid Procedures in their entirety.[3]

### CONTACT PERSONS FOR PARTIES INTERESTED IN SUBMITTING A BID

The Bid Procedures set forth requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Assets must comply strictly with the Bid Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bid Procedures.

**Any interested bidder should contact, as soon as practical:**

**Guggenheim Securities, LLC**
330 Madison Avenue
New York, NY 10017
Attn: Morgan Suckow, Ajay Bijoor and Jeremy Griggs
Phone: (212) 378-2874
(713) 300-1337
Email: Morgan.Suckow@guggenheimpartners.com
Ajay.Bijoor@guggenheimpartners.com
Jeremy.Griggs@guggenheimpartners.com

### IMPORTANT DATES AND DEADLINES[4]

1. **Bid Deadlines.** In order to be a Qualified Bidder, Potential Bidders must submit a non-binding indication of interest (a "Preliminary Bid") not later than **12:00 p.m. (Central Daylight Time) on July 17, 2019** (the "Preliminary Bid Deadline"). In order to participate in the Auction, a Potential Bidder shall deliver the Required Bid Documents in electronic format so as to be received not later than **12:00 p.m. (Central Daylight Time) on August 20, 2019** (the "Bid Deadline"), to Guggenheim Securities; provided that, after consultation with the Consulting Professionals, the Debtors may extend the Preliminary Bid Deadline and the Bid Deadline without further order of the Bankruptcy Court. If the Debtors extend the Preliminary Bid Deadline or the Bid Deadline, the Debtors will promptly notify all Potential Bidders.

---

[3]   To the extent of any inconsistencies between the Bid Procedures and the summary descriptions of the Bid Procedures in this notice, the Bid Procedures shall control in all respects.

[4]   The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bid Procedures and the Bid Procedures Order.

{S516602;}                                  - 2 -

2.      **Sale Objections Deadline.**  Objections to the proposed sale of the above-described property must be filed and served not less than seven (7) days before the date set for the proposed action (the "<u>Sale Objection Deadline</u>").  If no objection is timely filed or served, the proposed action may be taken without further notice or hearing.

3.      **Auction.**  In the event that the Debtors timely receive two or more Qualified Bids with respect to the Assets, the Debtors shall conduct one or more auctions (the "<u>Auction</u>") with respect to such Asset(s).  The Auction shall be in accordance with the Bid Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.  The Auction, if held, shall be conducted on **August 27, 2019 at __:__ _.m.**, at a location as designated by the Debtors in a notice filed on the docket of the Court and published on the Debtors' case information website (located at http://www.kccllc.net/whitestar).

4.      **Sale Hearing.**  A hearing (the "<u>Sale Hearing</u>") to consider the proposed Sale will be held before the Court on _____, 2019 at __:__ _.m. (**Central Daylight Time**), or such other date as determined by the Debtors, at 215 Dean A. McGee Avenue, Oklahoma City, Oklahoma 73102.  The Sale Hearing may be accelerated or adjourned by the Debtors by an announcement of the adjourned date at a hearing before the Bankruptcy Court or by filing a notice on the Bankruptcy Court's docket.  If the Debtors do not receive any Qualified Bids, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing.  At the Sale Hearing, the Debtors will seek approval of the offer or offers constituting the Successful Bid(s) and, at the Debtors' election, the offer or offers constituting the Alternate Bid(s).

        **PLEASE TAKE FURTHER NOTICE** that pursuant to the Bid Procedures Order, the Debtors are, at any time after the Preliminary Bid Deadline and prior to the Auction, authorized to designate one or more Qualified Bids as a stalking horse bid (each, a "<u>Stalking Horse Bid</u>") and execute an asset purchase agreement with the applicable stalking horse bidder (each, a "<u>Stalking Horse Bidder</u>").  No bid may be a Stalking Horse Bid if it does not constitute a Qualified Bid.  A Potential Bidder must deliver the Required Bid Documents in electronic format so as to be received not later than 12:00 p.m. (Central Daylight Time) on July 17, 2019 (the "<u>Bid Deadline</u>") for a bid to be a Qualified Bid.

        **PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to, in their reasonable business judgment, modify the Bid Procedures at any time, including, without limitation, to extend deadlines and proposed dates set forth therein, including extending the Bid Deadline, modifying the date of the Auction, and adjourning and/or rescheduling the Sale Hearing.  This Notice is subject to the fuller terms and conditions set forth in the Bid Procedures Order and the Bid Procedures.

        **PLEASE TAKE FURTHER NOTICE** that the Assets are to be sold free and clear of any and all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

        **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the relief requested in the Motion (other than relief granted by the Bid Procedures Order) must be filed electronically with the Court on the docket of *In re White Star Petroleum Holdings, LLC, et*

*al.*, Case No. 12521-JDL and be required to be served upon each of the following: (a) the Honorable Janice D. Loyd, United States Bankruptcy Judge; (b) the Office of the United States Trustee for the Western District of Oklahoma; (c) proposed counsel to the Debtors; (d) counsel to the agent of the Debtors' prepetition first lien lenders; (e) counsel to the Debtors' prepetition second lien lender; (f) counsel to the DIP Agent; (g) counsel to the Committee; (h) all parties requesting notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (i) any party that has appeared in the involuntary proceeding pending against White Star Petroleum LLC (collectively, the "Objection Notice Parties"), so as to be actually received no later than Sale Objection Deadline.

    **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served and received will be considered at the Sale Hearing. **Any party failing to timely file and serve an objection to the Sale on or before the Sale Objection Deadline in accordance with the Bid Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests**.

    **PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the fuller terms and conditions of the Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety. Copies of the Motion, the Bid Procedures and the Bid Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available (i) from the website of the Debtors' proposed claims and noticing agent, Kurtzman Carson Consultants LLC ("KCC"), at http://www.kccllc.net/whitestar and (ii) on the Court's electronic docket for the Debtors' chapter 11 cases at https://www.okwb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). In addition, copies of the Motion may be requested from KCC at (866) 967-0670 (U.S./Canada) or (310) 751-2670 (International).

Dated: _____, 2019
Oklahoma City, Oklahoma

_____
John D. Dale, OBA No. 19787
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: jdale@gablelaw.com

-and-

_____
Craig M. Regens, OBA No. 22894
GABLEGOTWALS
One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102
Telephone:   (405) 568-3313
Facsimile:    (405) 235-2875
cregens@gablelaw.com

-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Co-Counsel to White Star*

## EXHIBIT 3

**Form of Initial Assignment Notice**

{S516602;}

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| In re | x<br>:<br>: | Chapter 11 |
| WHITE STAR PETROLEUM HOLDINGS, LLC,<br>*et al.*,[1] | :<br>:<br>:<br>: | Case No. 19-12521-JDL |
| Debtors. | :<br>:<br>x | Jointly Administered |

**NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR
UNEXPIRED LEASES AND CURE AMOUNT**

**You are receiving this Notice of Assumption and Assignment of Executory
Contracts or Unexpired Leases and Cure Amount (this "Notice of Assumption and
Assignment") because you may be a counterparty to an executory contract or unexpired
lease with White Star Petroleum Holdings, LLC or one or more of its affiliated debtors
(collectively, the "Debtors").  Please read this notice carefully as your rights may be
affected by the transactions described herein.**

**PLEASE TAKE NOTICE** that on May 28, 2019, each of the Debtors filed a
voluntary petition for relief under of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*
(the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of
Oklahoma (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on June 21, 2019, the Debtors filed
the *Debtors' Restated Motion for Entry of Orders (I)(A) Approving Bid Procedures for Sale of
Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and
Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of
Sale, Auction and Sale Hearing and (E) Approving Assumption and Assignment Procedures and
(II)(A) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and
Encumbrances and (B) Authorizing Assumption and Assignment of Executory Contracts and
Unexpired Leases with Notice of Opportunity for Hearing and Notice of Hearing* [Doc. __] (the

---

[1]    The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer
identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR
Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC
(4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and
WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings,
WSTR, WSTR II and WSTR Operating, the "Debtors").  The Debtors' corporate
headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

{S516602;}

SC1:4964143.1

"Motion")[2] with the Bankruptcy Court seeking entry of orders, among other things, (i) approving bid procedures for the sale of the Debtors' assets (the "Sale"), (ii) approving stalking horse bid protections, (iii) scheduling an auction for (the "Auction"), and a hearing to approve, the sale of the Debtors' assets, (iv) approving the form and manner of notices of sale, auction and sale hearing, (v) approving assumption and assignment procedures (the "Assumption and Assignment Procedures"), (vi) approving the sale of the Debtors' assets free and clear of liens, claims, interests and encumbrances and (vii) authorizing the assumption and assignment of executory contracts and unexpired leases.

PLEASE TAKE FURTHER NOTICE that on May 28, 2019, the Bankruptcy Court entered an order (the "Bid Procedures Order") approving certain Bid Procedures (the "Bid Procedures") attached as Exhibit 1 to the Bid Procedures Order, which establish the key dates and times related to the Sale and the Auction.

PLEASE TAKE FURTHER NOTICE that, upon closing of the Sale, the Debtors intend to assume and assign to the Successful Bidder(s) certain executory contracts and unexpired leases (the "Assumed Contracts"). A list (the "Executory Contract List") (i) identifying each Assumed Contract applicable to each counterparty (a "Counterparty") and (ii) setting forth the proposed amount (the "Cure Amount") necessary to cure any default under the relevant Assumed Contract pursuant to section 365 of the Bankruptcy Code is attached hereto.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT.**

**IF YOU AGREE WITH THE ASSUMPTION AND ASSIGNMENT OF YOUR CONTRACT(S) AND THE PROPOSED CURE AMOUNT(S) LISTED IN EXECUTORY CONTRACT LIST WITH RESPECT TO YOUR CONTRACT(S), YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION.**

**IF YOU DISAGREE WITH THE ASSUMPTION AND ASSIGNMENT OF YOUR CONTRACT(S) OR THE PROPOSED CURE AMOUNT(S) LISTED IN EXECUTORY CONTRACT LIST WITH RESPECT TO YOUR CONTRACT(S), YOU MAY OBJECT TO THE ASSUMPTION AND ASSIGNMENT OR THE PROPOSED CURE AMOUNT.**

PLEASE TAKE FURTHER NOTICE that service of this Notice of Assumption and Assignment does not constitute an admission that an Assumed Contract is an executory contract or unexpired lease of real property, or confirm that the Debtors are required to assume and assign such Assumed Contract.

PLEASE TAKE FURTHER NOTICE that pursuant to the Assumption and Assignment Procedures, objections (the "Contract Objections"), if any, to (a) the proposed Cure Amount, (b) the proposed assumption and assignment of the Assumed Debtor Contracts, (c) the

---

[2]   All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

adequate assurance of future performance or (d) whether applicable law excuses a Counterparty from accepting performance by, or rendering performance to, the Successful Bidder(s) must (i) be in writing; (ii) state with specificity the nature of such objection and, if disputed, the alleged Cure Amount and any and all defaults that must be cured or satisfied in order for such Assumed Debtor Contract to be assumed and assigned (with appropriate documentation in support thereof); (iii) comply with the terms of these Assumption and Assignment Procedures, the Bankruptcy Rules and the Local Bankruptcy Rules; and (iv) be filed with the Court and properly served on the Objection Notice Parties.

> **PLEASE TAKE FURTHER NOTICE** that if no objections are received by the applicable Contract Objection Deadline with respect to an Assumed Contract, the assumption and assignment of such Assumed Contract shall be deemed authorized and the proposed Cure Amount shall be binding on the applicable Counterparty for all purposes and will constitute a final determination of the total Cure Amount required to be paid in connection with the assumption and assignment of such contract. The Debtors may then submit to the Court a form of order (an "Approval Order") authorizing the assumption and assignment of such Assumed Debtor Contract. Upon entry of an Approval Order with respect to the assumption and assignment of an Assumed Debtor Contract, any and all previously filed Contract Objections with respect thereto shall be deemed resolved.

> **PLEASE TAKE FURTHER NOTICE** that if a Contract Objection is timely filed and properly served in accordance with the Assumption and Assignment Procedures, the Debtors and the Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention (the "Resolution Procedures"). If the parties determine that the Contract Objection cannot be resolved in a timely manner without judicial intervention, the Court shall make all necessary determinations relating to such Contract Objection at the applicable Contract Hearing (as defined below).

> **PLEASE TAKE FURTHER NOTICE** that a hearing with respect to Contract Objections to this Notice of Assumption and Assignment shall be held at the Sale Hearing or at such other earlier or later date prior to the closing of the Sale as the Court may designate (the "Initial Contract Hearing"). Hearings with respect to Contract Objections to any Further Assignment Notices may be held on such dates as this Court may designate (each an "Additional Contract Hearing," and together with the Initial Contract Hearing, each a "Contract Hearing"). Any Assumed Debtor Contract that is the subject of a Contract Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to the resolution of such objection. If the Court determines at such a hearing that a particular Assumed Debtor Contract cannot be assumed and assigned for any reason, then such Assumed Debtor Contract shall no longer be considered an Assumed Debtor Contract.

> **PLEASE TAKE FURTHER NOTICE that any Counterparty to an Assumed Debtor Contract who fails to timely file and properly serve a Contract Objection in accordance with the Assumption and Assignment Procedures (i) will be deemed to have forever waived and released any Contract Objection and consented to the assumption and assignment of such Assumed Contract on the terms set forth in this Notice of Assumption and Assignment, subject to occurrence of the closing of the Sale, and (ii) will be barred and estopped forever from asserting or claiming against the Debtors or the Successful Bidder(s)**

**that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assumed Contract.**

           **PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the fuller terms and conditions of the Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety.  Copies of the Motion, the Bid Procedures and the Bid Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available (i) from the website of the Debtors' proposed claims and noticing agent, Kurtzman Carson Consultants LLC ("KCC"), at http://www.kccllc.net/whitestar and (ii) on the Court's electronic docket for the Debtors' chapter 11 cases at https://www.okwb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).  In addition, copies of the Motion may be requested from KCC at (866) 967-0670 (U.S./Canada) or (310) 751-2670 (International).

Dated: _____, 2019
Oklahoma City, Oklahoma

_____
John D. Dale, OBA No. 19787
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: jdale@gablelaw.com

-and-

_____
Craig M. Regens, OBA No. 22894
GABLEGOTWALS
One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma  73102
Telephone:   (405) 568-3313
Facsimile:    (405) 235-2875
cregens@gablelaw.com

-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Co-Counsel to White Star*