IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

---------------------------------------------------------------- x
: Chapter 11
In re :
: Case No. 19-12521-JDL
WHITE STAR PETROLEUM HOLDINGS, LLC, :
*et al*.,[1] : Jointly Administered
:
Debtors. :
---------------------------------------------------------------- x

**MOTION OF THE DEBTORS FOR AN ORDER EXTENDING THE
EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTORS
MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF
WITH BRIEF IN SUPPORT AND NOTICE OF OPPORTUNITY FOR HEARING**

White Star Petroleum Holdings, LLC and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), extending by 120 days the exclusive periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof. Specifically, the Debtors seek to (a) extend the exclusive period to file a chapter 11 plan (the "Exclusive Filing Period") for each of the Debtors through and including January 23, 2020 and (b) extend the exclusive period to solicit acceptances of a chapter 11 plan of each of the Debtors (the "Exclusive Solicitation

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors"). The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

Period," and together with the Exclusive Filing Period, the "Exclusive Periods") through and including March 24, 2020. In support of the Motion, the Debtors respectfully state as follows:

## Background

1. The Debtors engage in the acquisition development, exploration and production of oil, natural gas, and natural gas liquids located in the Mid-Continent region in the United States.

2. The Debtors are headquartered in Oklahoma City, Oklahoma. As of December 2018, the Debtors owned approximately 315,000 net leasehold acres, primarily in Creek, Dewey, Garfield, Lincoln, Logan, Noble, and Payne counties of Oklahoma. Approximately 80% of the total acreage was held by production. As of December 31, 2018, the Debtors had an interest in a total of 883 gross productive wells (475 net) of which 590 were operated (451 net). The Debtors are not currently drilling any new wells.

3. On May 28, 2019 (the "Petition Date"), each of the Debtors filed with the United States Bankruptcy Court for the District of Delaware a voluntary petition for relief under the Bankruptcy Code. These chapter 11 cases were transferred to the United States Bankruptcy Court for the Western District of Oklahoma on June 20, 2019. On July 3, 2019, the Debtors' voluntary cases were consolidated into the involuntary case for WSTR that was filed on May 24, 2019.[2] Each Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases are being jointly administered pursuant to rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2] For WSTR only, "Petition Date" shall mean May 24, 2019.

4. On June 10, 2019, the Office of the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Doc. 60].

5. Additional factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Jeffrey J. Zanotti in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Doc. 2].

**Facts Specific to the Relief Requested**

6. The Debtors have made substantial progress in the first three months of these chapter 11 cases, preserving the value of the Debtors' businesses during the transition to operating in chapter 11 and exploring a sale of the Debtors' assets in consultation with key stakeholders. Specifically, the Debtors have, among other things:

   a. worked closely with their vendors, service providers and contractors to minimize the impact of these chapter 11 cases on their day-to-day operations;

   b. ensured that the Debtors' employees and holders of royalty interests are paid during these chapter 11 cases;

   c. negotiated with their prepetition secured lenders regarding debtor-in-possession financing on both an interim and final basis and the granting of adequate protection;

   d. retained professionals to advise the Debtors on all aspects of their restructuring;

   e. obtained approval for and implemented a key employee incentive plan and a key employee retention program;

   f. prepared and filed their schedules of assets and liabilities and statements of financial affairs;

   g. established a bar date for the filing of prepetition claims and implemented notice procedures approved by the Court; and

   h. run a robust marketing and sale process for substantially all of the Debtors' assets and established court-approved bid procedures in connection therewith and conducted an auction.

3

7.      Since the Petition Date, the Debtors have been engaged in a multi-month and wide-ranging marketing and sale process through which the Debtors have sought to sell their assets. Throughout this process, the Debtors have been coordinating with the Committee and the DIP lenders.

8.      In accordance with the *Order (A) Approving the Bid Procedures for Sale of Debtors' Assets, (B) Approving Stalking Horse Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing and (E) Approving Assumption and Assignment Procedures* [Doc. 290] (the "Bid Procedures Order"), the bid deadline for the Debtors' assets was September 5, 2019. Since then, the Debtors have dedicated substantial time to reviewing the received bids, determining which bids constitute "Qualified Bids" under the Bid Procedures Order, negotiating sale agreements with multiple bidders, and preparing for an auction.

9.      In accordance with the Bid Procedures Order, the Debtors, in consultation with the DIP lenders and the Committee, selected the highest or otherwise best offer, which was filed with the Court on September 12, 2019 [Doc. 514.]. The Debtors are preparing for a hearing before this Court to approve the sale scheduled for September 26, 2019, and expect to file a plan and disclosure statement soon thereafter.

10.      For each of the Debtors, the Exclusive Filing Period expires on September 25, 2019 and the Exclusive Solicitation Period expires on November 24, 2019.[3] The Debtors are requesting a 120-day extension of the Exclusive Periods to ensure there is sufficient time to permit the Debtors, without threat of interruption, to complete their proposed sale transaction and

---

[3]  While WSTR has an earlier Petition Date due to the filing of its involuntary case, the date of the order for relief post-dates the filing of its voluntary petition and, therefore, for purposes of 11 U.S.C. § 1121, the voluntarily petition filing date controls.

4

file, solicit and seek approval of a chapter 11 plan that will, among other things, provide for the distribution of the sale proceeds. The Debtors are also working to put processes in place to resolve various intercreditor and purported lien holder issues needing resolution.

## Jurisdiction

11. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and rule 81.4(a) of the Local Civil Rules of the United States District Court for the Western District of Oklahoma. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## Relief Requested

12. By this Motion, the Debtors seek entry of the Proposed Order, pursuant to section 1121(d) of the Bankruptcy Code, extending for an additional 120 days (a) the Exclusive Filing Period through and including January 23, 2020 and (b) the Exclusive Solicitation Period through and including March 24, 2020, in each case without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods in accordance with section 1121(d) of the Bankruptcy Code.

## Basis for Relief

**A.     Legal Standard for Extending the Exclusive Periods**

13. Sections 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case and the exclusive right to solicit votes for its plan for an additional 60 days. 11 U.S.C. §§ 1121(b)-(c).

14. Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to extend a debtor's exclusive period for filing a chapter 11 plan, and to solicit votes thereon, for

5

cause, by as much as 18 months (to file a plan) and 20 months (to solicit votes) from the petition date.  11 U.S.C. § 1121(d).  Although the Bankruptcy Code does not define "cause," the legislative history indicates that "cause" is intended to be a flexible standard that balances the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95-595 at 231, 232 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191.  This flexibility is intended to give a debtor an adequate opportunity to stabilize its business operations at the outset of the case and to then negotiate a plan with its creditors.  *See In re Ames Dep't Stores, Inc.*, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) (noting "[t]he purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors").  Courts have held that bankruptcy courts have discretion to extend a debtor's exclusive period and that they should base their decision on the totality of the circumstances in each case.  *See In re R&G Properties, Inc.*, 2009 WL 269696, at *1 (Bankr. D. Vt. Jan. 28, 2009); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006).

15. The complexity and size of a chapter 11 case may warrant extension of the exclusive periods in order to permit a debtor a meaningful opportunity to formulate a chapter 11 plan.  *See*, *e.g.*, *In re Texaco Inc.*, 76 B.R. 322, 325-27 (Bankr. S.D.N.Y. 1987) (holding that "cause" existed to grant the debtor's first request to extend exclusivity based on the size and complexity of the case alone).  However, a case need not be extremely large in order for a court to determine it is sufficiently complex to warrant extension of the exclusive periods.  *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) ("The Court does not believe it is necessary to be a Texaco, Johns-Manville Forest Products, or Ames Departments Stores to be considered 'large and complex' within the meaning of section 1121.").  In addition, many

courts consider the following non-exclusive factors in deciding whether "cause" exists to extend a debtor's exclusive periods:

- the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

- the existence of good faith progress toward reorganization;

- the fact that the debtor is paying its bills as they come due;

- whether the debtor has demonstrated reasonable prospects for filing a viable plan;

- whether the debtor has made progress in its negotiations with creditors;

- the amount of time that has elapsed in the case;

- whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

- the existence of an unresolved contingency.

*See In re Adelphia*, 352 B.R. at 587 (listing factors); *see also In re Express One Int'l, Inc.*, 194 B.R. 98, 101 (Bankr. E.D. Tex. 1996) (finding cause to extend the exclusive period because the debtor was diligent in its attempts to reorganize and was not seeking an extension for an indefinite period).

16. Not all of these factors are relevant in every case, and a finding that any of these factors exists may justify extending a debtor's exclusive periods. *See In re Dow Corning Corp.*, 208 B.R. 661, 699 (Bankr. E.D. Mich. 1997) (noting that "sometimes certain factors are just more relevant or important than others"); *In re Express One*, 194 B.R. at 100-01 (four factors relevant in determining whether cause exists to extend exclusivity); *Matter of Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors showed that bondholders' committee failed to show cause to terminate debtors' exclusivity).

7

17. This is the Debtors' first request to extend the Exclusive Periods. Courts in this district have granted requests to extend exclusivity in oil and gas cases, and there is cause to do so here. *See, e.g.*, *In re GMX Resources Inc.*, Case No. 13-11456 (SAH) (Bankr. W.D. Okla. 2013) [Docs. 562, 816] (initial extension of 90 days and additional extension of 45 days); *In re Millennium Multiple Employer Welfare Benefit Plan*, Case No. 10-13528 (TMW) (Bankr. W.D. Okla. 2011) [Doc. 857].

**B.     Cause Exists to Extend the Exclusive Periods**

18. The facts and circumstances of these chapter 11 cases plainly demonstrate that sufficient cause exists to grant the Debtors' requested initial extension of the Exclusive Periods.

    a.     <u>These Chapter 11 Cases are Complex; Additional Time is Needed</u>.

19. These chapter 11 cases involve five debtors and have required the Debtors to run a multi-month marketing and sale process for their assets. The Debtors have had to do so while transitioning into chapter 11 and working to continue normal business operations. Administering these chapter 11 cases therefore requires the Debtors to coordinate with creditors, vendors, service providers, contractors and other stakeholders located throughout the Mid-Continent region. The potential sale of the Debtors' assets has also involved extensive negotiations and discussions with numerous potential purchasers. Moreover, a plan will need to address the fact that there are various claim priority disputes to be resolved. Given these intricacies, the complexity of these chapter 11 cases weighs in favor of granting the Debtors' requested extension.

b.  The Debtors are Progressing in Good Faith Towards Reorganization.

20. Exclusivity also provides a debtor with a full and fair opportunity to rehabilitate its business and negotiate, develop, propose and, ultimately, confirm and consummate a chapter 11 plan. In the three months since the Debtors commenced these chapter 11 cases, the Debtors have made significant progress in good faith towards achieving these objectives. While working to stabilize their businesses, the Debtors have been in frequent discussions with the Committee and their other stakeholders regarding the best path forward for the restructuring of the Debtors' estates. Informed by these discussions, the Debtors have continued to pursue in earnest a sale of substantially all of their assets. At this time, the Debtors expect to pursue solicitation and confirmation of a chapter 11 plan that is being developed with input from their key stakeholders to foster consensus.

c.  The Debtors Are Paying Their Bills as They Become Due.

21. The Debtors have been paying their undisputed postpetition bills as they become due. Moreover, the Debtors continue to generate positive cash flow every month. These facts demonstrate that the Debtors will be able to continue to meet their ongoing postpetition obligations, and that the requested extension of the Exclusive Periods will not prejudice any creditors or other parties doing business with the Debtors during the pendency of these chapter 11 cases.

d.  The Debtors Have Reasonable Prospects for Filing a Viable Plan.

22. The Debtors believe that the sale of their assets will provide the value to permit them to present a viable and confirmable chapter 11 plan. The Debtors have the financial, management and advisory resources to develop, negotiate and prosecute a confirmable plan, and

are committed to working with their key stakeholders to do so promptly.  The Debtors currently expect to file a chapter 11 plan soon after approval of the proposed sale transaction.

e. <u>The Debtors Have Made Progress in Negotiations with Creditors</u>.

23. Since the Petition Date, the Debtors have been in frequent discussions with their DIP lenders regarding developments in these chapter 11 cases.  Among other things, the Debtors have successfully negotiated the terms of interim and final orders approving postpetition financing.  Pursuant to the final DIP order [Doc. 328], the Debtors have provided their DIP lenders access to the Debtors' financial information, including 13-week cash flow projections, monthly financial reports, and prior notice of disbursements.

24. The bid procedures approved by the Bid Procedures Order were developed by the Debtors with the input of counsel to the DIP lenders, and provide for consultation with key stakeholders during the sale process.  Counsel to the Committee and the DIP lenders have been consulted regarding the sale process.  The Debtors expect that they will continue to have a positive working relationship with the Committee and the DIP lenders, as well as their other key stakeholders.

f. <u>Very Little Time Has Elapsed in These Chapter 11 Cases</u>.

25. The Debtors' request for an extension of the Exclusive Periods is the Debtors' first and necessarily comes only three months after the Petition Date.  Since filing for chapter 11, the Debtors have accomplished much and anticipate, with the requested extension, they will be able to continue their progress, complete a sale of substantially all of their assets, and take further steps toward a successful resolution of these chapter 11 cases.

      g.      <u>The Debtors Are Not Seeking an Extension to Pressure Creditors</u>.

26. The Debtors' request to extend the Exclusive Periods is not intended to maintain leverage over any group of creditors. Rather, the extension is being requested to permit the Debtors to maintain the ability to pursue an organized case and file a chapter 11 plan following completion of the sale process that will be in the best interests of all stakeholders.

      h.      <u>The Committee and the DIP Lenders Have Been Consulted on the Extension</u>.

27. The Debtors have discussed extending the Exclusive Periods with counsel to the Committee and counsel to the DIP lenders. The Debtors understand that the DIP lenders agreed to the requested extension of the Exclusive Periods and the Committee is actively considering the request.

**Notice**

28. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Western District of Oklahoma (the "<u>U.S. Trustee</u>"); (b) counsel to the agent of the Debtors' prepetition first lien lender; (c) counsel to the Debtors' prepetition second lien lender; (d) counsel to the DIP agent; (e) counsel to the Committee; (f) any other party that has requested notice pursuant to Bankruptcy Rule 2002 in compliance with the Court's case management order [Doc. 266]. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order and (b) grant such other and further relief as is just and proper.

**NOTICE OF OPPORTUNITY FOR HEARING**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS DOCUMENT CAREFULLY AND CONSULT YOUR ATTORNEY ABOUT YOUR RIGHTS AND THE EFFECT OF THIS DOCUMENT.** IF YOU DO NOT WANT THE COURT TO GRANT THIS REQUESTED RELIEF, OR YOU WISH TO HAVE YOUR VIEWS CONSIDERED, YOU MUST FILE A WRITTEN RESPONSE OR OBJECTION TO THE REQUESTED RELIEF WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OK 73102 NO LATER THAN 4:00 P.M. CENTRAL TIME ON **THE DATE THAT IS SEVEN (7) DAYS BEFORE THE NEXT SCHEDULED OMNIBUS HEARING THAT IS AT LEAST TWENTY-ONE (21) DAYS FROM THE DATE OF THE FILING OF THIS DOCUMENT**. YOU SHOULD ALSO SERVE A FILE-STAMPED COPY OF YOUR RESPONSE OR OBJECTION TO THE UNDERSIGNED MOVANT/ MOVANT'S ATTORNEY AND FILE A CERTIFICATE OF SERVICE WITH THE COURT. THIS DOCUMENT WILL BE HEARD AT THE NEXT SCHEDULED OMNIBUS HEARING THAT IS AT LEAST TWENTY-ONE (21) DAYS FROM THE DATE OF THE FILING OF THIS DOCUMENT. IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING OR FURTHER NOTICE.

Dated: September 13, 2019  
Oklahoma City, Oklahoma

*/s/ John D. Dale*  
John D. Dale, OBA No. 19787  
GABLEGOTWALS  
1100 ONEOK Plaza  
100 West 5th Street  
Tulsa, Oklahoma 74103-4217  
Telephone: (918) 595-4800  
Fax: (918) 595-4990  
Email: jdale@gablelaw.com

-and-

*/s/ Craig M. Regens*  
Craig M. Regens, OBA No. 22894  
GABLEGOTWALS  
One Leadership Square  
211 North Robinson

Oklahoma City, Oklahoma  73102
Telephone:   (405) 568-3313
Facsimile:    (405) 235-2875
cregens@gablelaw.com

-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:     (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Co-Counsel to the Debtors*

# **EXHIBIT A**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re | Chapter 11 |
| WHITE STAR PETROLEUM HOLDINGS, LLC, *et al.*,[1] | Case No. 19-12521-JDL |
| | Jointly Administered |
| Debtors. | |

ORDER EXTENDING THE EXCLUSIVE PERIODS
DURING WHICH ONLY THE DEBTORS MAY FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors"). The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

SC1:5020942.3

Upon the motion (the "Motion")[2] of White Star Petroleum Holdings, LLC and certain of its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this "Order"), pursuant to section 1121(d) of the Bankruptcy Code, extending by 120 days (a) the exclusive period to file a chapter 11 plan (the "Exclusive Filing Period") for each of the Debtors through and including January 23, 2020 and (b) the exclusive period to solicit acceptances of a chapter 11 plan of each of the Debtors (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") through and including March 24, 2020; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and rule 81.4(a) of the Local Civil Rules of the United States District Court for the Western District of Oklahoma; and venue of these chapter 11 cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and that the response deadline to the Motion expired on October 10, 2019; and objections (if any) to the Motion having been withdrawn, resolved or overruled; and this Court finding that proper and adequate notice of the Motion and the relief requested therein has been provided; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

---

[2] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

SC1:5020942.3

2. Pursuant to section 1121(d) of the Bankruptcy Code, for each of the Debtors, the Exclusive Filing Period is hereby extended through and including January 23, 2020, and the Exclusive Solicitation Period is hereby extended through and including March 24, 2020.

3. This Order is without prejudice to the Debtors' ability to seek further extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

4. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

6. Findings of fact are based upon representations of counsel.

IT IS SO ORDERED.

###

Approved for Entry:

---

John D. Dale, OBA No. 19787
GABLEGOTWALS
1100 ONEOK Plaza
100 West 5th Street
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990
Email: jdale@gablelaw.com

-and-

---

Craig M. Regens, OBA No. 22894
GABLEGOTWALS
One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 568-3313
Facsimile: (405) 235-2875

cregens@gablelaw.com

-and-

Andrew G. Dietderich, NY Bar 2850584
Brian D. Glueckstein, NY Bar 4227005
Alexa J. Kranzley, NY Bar 4707386
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
dietdericha@sullcrom.com
gluecksteinb@sullcrom.com
kranzleya@sullcrom.com

*Co-Counsel to the Debtors*

4