**Dated: February 25, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re | Chapter 11 |
| WHITE STAR PETROLEUM HOLDINGS, LLC, *et al.*,[1] | Case No. 19-12521-JDL |
| Debtors. | Jointly Administered |

### STIPULATION AND AGREED ORDER AUTHORIZING
### THE DEBTORS' CONTINUED USE OF CASH COLLATERAL

White Star Petroleum Holdings, LLC and the other above-captioned debtors and debtors in possession (collectively, "Debtors") and the Prepetition RBL Agent (together with the Debtors,

---

[1] The Debtors in these chapter 11 cases, and the last four digits of their U.S. taxpayer identification numbers are: White Star Petroleum Holdings, LLC (0575) ("WSTR Holdings"), White Star Petroleum, LLC (0977) ("WSTR"), White Star Petroleum II, LLC (4347) ("WSTR II"), White Star Petroleum Operating, LLC (5387) ("WSTR Operating") and WSP Finance Corporation (9152) ("WSP Finance" and together with WSTR Holdings, WSTR, WSTR II and WSTR Operating, the "Debtors"). The Debtors' corporate headquarters is located at 301 N.W. 63rd Street, Suite 600, Oklahoma City, OK 73116.

the "Parties") by their respective attorneys, enter into this Stipulation and Agreed Order amending the Final DIP Order (defined below) and authorizing the Debtors' continued use of cash collateral (the "Stipulation").

The Parties hereby stipulate and agree as follows:

## RECITALS

A.    On May 28, 2019, each of the Debtors filed with the United States Bankruptcy Court for the District of Delaware a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases were transferred to the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court") on June 20, 2019. On July 3, 2019, WSTR's voluntary case was consolidated into the involuntary case for WSTR that was filed on May 24, 2019.[2] Each Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases are being jointly administered pursuant to rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    On July 23, 2019, this court entered the *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* (the "Final DIP Order")[3] [Docket No. 328].

---

[2]  For WSTR, "Petition Date" shall mean May 24, 2019. For all other Debtors, "Petition Date" shall mean May 28, 2019.

[3]  All defined terms used in this Stipulation shall have the meaning ascribed to them in the Final DIP Order unless otherwise defined herein.

2

C.    Paragraph 4 of the Final DIP Order authorizes the Debtors' use of Cash Collateral solely in accordance with the terms of the DIP Loan Documents and subject to the terms and conditions of the Interim Order and the Final DIP Order. Paragraph 18 of the Final DIP Order provides that the Prepetition Secured Parties shall not, among other things, seek to terminate or modify the use of Cash Collateral so long as any DIP Obligations remain outstanding.

D.    According to the Final DIP Order, the Official Committee of Unsecured Creditors (the "Committee") and other parties-in-interest had only until their applicable Investigation Termination Date to file a Challenge. There were two Challenges brought before the applicable Investigation Termination Date, (i) the Committee's Amended Complaint in adversary proceeding number 19-01088 and (ii) Shebester-Bechtel, Inc.'s third-party claims in adversary proceeding number 19-10172. No other Challenges were timely filed. Nothing in the Final DIP Order required or obligated a Statutory Lienholder to initiate a Challenge to preserve, adjudicate, or determine the nature and extent of their lien rights or security interests in property of the Debtors' estates, and the Final DIP Order did not prejudice the rights of Statutory Lienholders with respect to the validity, perfection, or priority of any of their lien rights, privileges, or security interests.

E.    The Debtors, the Prepetition RBL Agent and the Committee have agreed on a proposed disclosure statement (as may be amended, modified, supplemented and/or replaced by the Debtors from time to time, the "Disclosure Statement") and chapter 11 plan of liquidation (as may be amended, modified, supplemented and/or replaced by the Debtors from time to time, the "Plan"), which were filed with the Bankruptcy Court on January 6, 2020 [Docket Nos. 945 and 946]. The Parties are seeking entry of this Stipulation in order to clarify the Debtors' continued consensual use of Cash Collateral following repayment of the DIP Obligations through the expected conclusion of these Chapter 11 Cases.

**AGREEMENT**

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties, as follows:

1. Effective Date. The "Effective Date" of this Stipulation shall be nunc pro tunc to January 1, 2020.

2. Use of Cash Collateral. Subject to the terms and conditions set forth in this Stipulation, the Debtors are hereby authorized to continue to use Cash Collateral from the Effective Date until the earlier of: (a) the entry of an order by the Bankruptcy Court modifying or terminating the use of Cash Collateral; (b) ten (10) business days after the declaration of Termination Event by the Prepetition RBL Agent; and (c) the effective date of the Plan (as defined below) (subject to such date being extended as may be agreed in writing by the Prepetition RBL Agent) (the "Expiration Date"). The Prepetition RBL Agent, on behalf of the Prepetition RBL Lenders, consents to the Debtors' continued use of Cash Collateral. Prior to the occurrence of a Termination Event (as defined below), the Prepetition Secured Parties shall not seek to terminate or modify the use of Cash Collateral as provided for in this Stipulation.

3. Budget. The Debtors shall only be authorized to use Cash Collateral to pay their actual and necessary expenses, not to exceed the maximum budgeted amounts therefore as set forth in the Approved Budget (as defined below and as attached hereto as Exhibit A, the "Initial Approved Budget"); provided that cumulative Disbursements (as defined below) may exceed the budgeted Disbursements set forth in the Approved Budget for any Budget Test Period (as defined below) by up to 15%, plus the amount of any Carryover (as defined below) budgeted Disbursements from the immediately preceding Budget Test Period which are not included in the

current Budget Test Period (the foregoing permitted variances from the Approved Budget, the "Permitted Variance"); provided further that Professional Fees (as defined below) shall only be tested against and may not exceed the maximum budgeted amounts for each professional set forth in the Approved Budget for the entire period covered by the Approved Budget and not any individual Budget Test Period. All such additional amounts permitted pursuant to the Permitted Variance or in accordance with the procedures set forth in the definition of "Approved Budget" below shall be governed by and subject to the terms of this Stipulation.

4.     Carve-Out. The Carve-Out in Final DIP Order shall remain in full force and effect for all fees and expenses of Professionals incurred prior to the Effective Date of this Stipulation. From and after the Effective Date, the Adequate Protection Obligations, Adequate Protection Liens, and Prepetition RBL Liens shall be subject to the payment of the fees, costs and expenses accrued or incurred by any person or firm retained by the Debtors or the Committee as an estate professional (including, without limitation, the reasonable out-of-pocket travel expenses of individual Committee members incurred in connection with their duties for the Committee with respect to (i) any in-person meetings reasonably requested by the Debtors, Committee professionals or the Prepetition RBL Agent or (ii) attendance at the confirmation hearing in the Chapter 11 Cases) (collectively, the "Professionals") and payable under sections 328, 330 and/or 331 of the Bankruptcy Code, to the extent allowed by an order of this Court up to the amount set forth for each Professional in the Approved Budget (the "New Carve-Out"). Notwithstanding the foregoing, nothing contained herein is intended to (i) constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, the Prepetition RBL Agent, the Prepetition RBL Lenders, the Committee, the U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts

incurred or requested; or (ii) limit or otherwise cap the overall amount of fees and expenses incurred by the Debtors and/or Committee's professionals in these Chapter 11 Cases that are allowed and subject to payment under sections 330 and 331 of the Bankruptcy Code from the Debtors and/or the Debtors' estates; provided, however, that nothing in this stipulation shall be deemed an authorization to use cash collateral to pay any Professional Fees in excess of the amounts set forth in the Approved Budget.  Notwithstanding anything to the contrary herein, the New Carve-Out shall be senior to the Adequate Protection Obligations, Adequate Protection Liens, and Prepetition RBL Liens and all other liens and claims granted under the Final DIP Order, or otherwise securing or in respect of the Adequate Protection Obligations.

5.     <u>Rights of Prepetition RBL Agent</u>.  All rights accorded to Prepetition RBL Agent and the Prepetition RBL Lenders under the Final DIP Order shall continue as if the DIP Obligations and the DIP Loan had not been repaid.  For the avoidance of doubt, (i) in no event shall any Cash Collateral be used by the Debtors or any representative of the Debtors' estates to investigate or prosecute any claim against the Prepetition RBL Secured Parties, (ii) the Debtors and all representatives of the Debtors' estates shall not be permitted to surcharge the Prepetition Collateral or Cash Collateral pursuant to 11 U.S.C. § 506(c) or otherwise and (iii) the Adequate Protection Obligations, the Adequate Protection Liens and the Prepetition RBL Liens shall be subject to the Carve-Out set forth in the Final DIP Order for fees and expense incurred prior to the Effective Date and the New Carve-Out provided in Paragraph 4 hereof for fees and expenses incurred on and after the Effective Date.

6.     <u>Events of Default</u>.  The following shall each constitute an "Event of Default" under this Stipulation, each of which may be waived in writing by the Prepetition RBL Agent in its sole discretion or otherwise modified by agreement of the Debtors and the Prepetition RBL Agent:

a. unauthorized use of Cash Collateral by the Debtors;

b. failure by the Debtors to comply with any of the reporting requirements set forth herein and such failure shall continue for five (5) business days after receipt of a written notice from the Prepetition RBL Agent to comply with such reporting requirements;

c. failure by the Debtors to perform any other obligation contemplated by this Stipulation and such failure shall continue for five (5) business days after receipt of a written notice from the Prepetition RBL Agent to perform such obligations;

d. failure by the Debtors to continue to seek approval of the Disclosure Statement or confirmation of the Plan;

e. failure to obtain an order approving the Disclosure Statement on or before February 28, 2020;

f. failure to obtain an order approving the Plan on or before April 20, 2020; and

g. the Plan shall not have become effective on or before May 4, 2020.

h. Bankruptcy Matters:

　　i. the Bankruptcy Court shall enter any order dismissing any of the Chapter 11 Cases (other than in connection with a transfer of venue of such Chapter 11 Cases, so long as there remains a pending proceeding in the Bankruptcy Court under the Bankruptcy Code with respect to each Debtor) or converting any of the Chapter 11 Cases to a chapter 7 case;

　　ii. the Bankruptcy Court shall enter any order appointing a chapter 11 trustee or a receiver, or appointing an examiner with enlarged powers

        relating to the operation of the business of any Debtor under section 1106(b) of the Bankruptcy Code in any of the Chapter 11 Cases;

  iii.  the Bankruptcy Court shall enter an order granting relief from the any stay of proceeding (including the automatic stay) to any person holding or asserting a lien to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any Debtor or any subsidiary which have an aggregate value in excess of $500,000, except as otherwise approved by the Prepetition RBL Agent in its reasonable discretion;

  iv.  the Bankruptcy Court shall enter any order granting or allowing any other superpriority claim (other than the Carve-Out or the New Carve-Out) or granting any other lien (including any adequate protection lien) having a priority equal or superior to the Adequate Protection Superpriority Claims and Adequate Protection Liens granted in favor of the Prepetition RBL Agent, without the prior written consent of the Prepetition RBL Agent (or as otherwise provided in the Final DIP Order);

  v.  the Bankruptcy Court shall enter any order staying, reversing, vacating or otherwise modifying, without the prior written consent of the Prepetition RBL Agent, this Stipulation (and such order is not stayed or reversed within two (2) business days after entry thereof);

  vi.  the payment or granting of adequate protection with respect to prepetition indebtedness (other than as described herein or the Interim

Order or Final DIP Order) in a manner that requires cash expenditures either (x) not contemplated by the Approved Budget or (y) that would have a material adverse effect on the Prepetition Collateral (as reasonably determined by the Prepetition RBL Agent), in each case, without the prior written consent of the Prepetition RBL Agent;

vii. any Adequate Protection Lien granted in favor of the RBL Prepetition Agent under the Interim Orders or Final DIP Order shall cease to have the validity, perfection or priority set forth in the Interim Order or Final DIP Order;

viii. any Debtor fails to comply with any material term of this Stipulation and such failure continues for three (3) days after the earlier of the date on which (A) any Debtor or any Subsidiary receives notice thereof and (B) an Authorized Officer of any Debtor obtains or, with the exercise of reasonable diligence, should have obtained, knowledge thereof;

ix. the filing by any Debtor of any motion, pleading or other paper seeking or otherwise consenting to or supporting the appointment of a chapter 11 trustee, a receiver, or appointment of an examiner with enlarged powers relating to the operation of the business of any Debtor under section 1106(b) of the Bankruptcy Code in any of the Chapter 11 Cases;

x. other than payments authorized by one or more orders of the Bankruptcy Court and which are set forth in the Approved Budget (subject to the Permitted Variance), any Debtor shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or

9

otherwise on account of any prepetition indebtedness (other than the Prepetition RBL Obligations) or prepetition payables (including, without limitation, reclamation claims);

xi. (A) any Debtor engages in or supports any challenge to the validity, perfection, priority, extent or enforceability of any of the DIP Loan Documents or the Prepetition RBL Loan Documents or the liens securing the DIP Obligations or the Prepetition RBL Obligations, including without limitation seeking to equitably subordinate or avoid the liens securing such obligations; or (B) any Debtor engages in or supports any investigation or asserts any claims or causes of action (or directly or indirectly supports assertion of the same) against the DIP Agent, any DIP Lender, the Prepetition RBL Agent or any Prepetition RBL Lender, in each case, in their capacity as such; <u>provided</u>, <u>however</u>, that it shall not constitute a Termination Event if the Debtors provide information with respect to the Prepetition RBL Loan Documents to a party in interest, or are compelled to provide information by an order of the Bankruptcy Court so long as the Prepetition RBL Agent has been served with the request for such an order or, if no such service has been made prior to the time the Debtors are required to provide information, so long as the Debtors provide prior written notice to the Prepetition RBL Agent of any intention or requirement to do so;

SC1:5149575.3

xii. the filing of any motion by any Debtor seeking an order from the Bankruptcy Court substantively consolidating any of the Debtors' estates, other than in connection with the Plan;

xiii. any Debtor shall file a motion in any of the Chapter 11 Cases to obtain additional financing under sections 364(c) or (d) of the Bankruptcy Code;

xiv. any Debtor shall file a motion seeking relief under section 506(c) or 552(b) of the Bankruptcy Code that would have an adverse effect on the Prepetition Collateral, without the prior written consent of the Prepetition RBL Agent; and

xv. any Debtor shall modify (x) the Disclosure Statement or the Plan in a manner that is materially adverse to the Prepetition RBL Agent or the Prepetition RBL Lenders as determined by the Prepetition RBL Agent in its reasonable discretion or (y) the treatment of Allowed RBL Secured Claims or RBL Deficiency Claims (each as defined in the Plan) in any respect without the consent of the Prepetition RBL Agent.

The Debtors shall notify the Prepetition RBL Agent immediately upon the occurrence of an Event of Default. Upon the occurrence and during the continuance of an Event of Default, the Prepetition RBL Agent may, at any time, declare in writing to the Debtors and the Committee such Event of default to be a "Termination Event". Following the declaration of a Termination Event, the Debtors may seek an order from the Bankruptcy Court permitting the Debtors' continued use of Cash Collateral. The Prepetition RBL Agent consent to shortened notice (which shall be no less

11

SC1:5149575.3

than three (3) business days) and an expedited hearing for such relief following the declaration of a Termination Event.

  7.  <u>Adequate Protection Claim and Payment</u>.  The Debtors acknowledge that the Prepetition RBL Lenders have Adequate Protection Claims arising from the granting of priming liens on the Prepetition Collateral and the Debtors' use of Cash Collateral and other Prepetition Collateral; provided, however, that nothing in this Stipulation shall be a final determination of the amount of the Adequate Protection Claims of the Prepetition RBL Lenders.  The Debtors are hereby authorized (but not directed), with the written consent of the Committee on terms and conditions acceptable to the Debtors, the Committee and the Prepetition RBL Agent, to make, in one or more payments in amounts determined by the Debtors and consented to by the Committee but not exceeding $25 million in the aggregate, discretionary payments to the Prepetition RBL Agent for the benefit of the Prepetition RBL Lenders in partial satisfaction of these Adequate Protection Claims and/or the Prepetition RBL Obligations.  Further, as partial adequate protection for the Debtors' continued use of Cash Collateral, the Debtors shall pay to the Prepetition RBL Agent the reasonable, documented, out-of-pocket fees, costs and expenses incurred or accrued by the Prepetition RBL Secured Parties for legal counsel and financial advisors (which shall be limited to the reasonable and documented out-of-pocket fees and expenses of Paul Hastings LLP, RPA Advisors, Tomlins Law, PLLC and James W. Barlow and one financial advisor (which shall be RPA Advisors, LLC) for the Prepetition RBL Lenders as a group) whether incurred before or after the Petition Date in the same manner and subject to the same conditions as provided for in paragraph 8 of the Final DIP Order.  In the event the Debtors consent to a payment to the Prepetition RBL Agent for the benefit of the Prepetition RBL Lenders in partial satisfaction of these Adequate Protection Claims and/or the Prepetition RBL Obligations but the Committee does

not consent in writing, any such payment may only be made upon further order of the Court after notice and an opportunity to be heard.

8. <u>Continued Use of Operating Account; Use of Funds</u>.  The Debtors shall continue to use one or more Controlled Accounts and shall cause all Cash Collateral that may be collected or received by or for the benefit of the Debtors to be deposited into the Controlled Accounts.  The Debtors shall be authorized to withdraw all amounts necessary out of the Controlled Accounts to pay all of its expenses or expenditures in accordance with and subject to the Approved Budget (including the Permitted Variance) and this Stipulation.  For avoidance of doubt, any cash or cash equivalents received by the Debtors on behalf of Contango Oil & Gas Company ("<u>Contango</u>") in accordance with the terms of that certain Transition Services Agreement, dated as of November 1, 2019, by and among WSTR, WSTR II, WSTR Operating and Contango (the "<u>Transition Services Agreement</u>"), is not and shall not be deemed to be Cash Collateral, shall not be subject to the terms of this Stipulation and shall not be required to be deposited in the Controlled Accounts.

9. <u>Reporting Requirements</u>.  During the term of this Stipulation, on or before 12:00 PM (Eastern time) on Thursday of each calendar week (commencing with the first Thursday following the entry of this Stipulation), a report in form, substance and detail reasonably acceptable to the Prepetition RBL Agent, reflecting variances in Disbursements from the Approved Budget on a line-by-line basis and a cumulative basis, which report shall include an explanation of variances and shall detail the following (a "<u>Variance Report</u>"):

   a. the actual amount of Receipts and other cash flow of the Debtors during the Budget Test Period most recently ended;

   b. the actual amount of Disbursements of the Debtors during the Budget Test Period most recently ended;

    c. any variance (whether plus or minus and expressed as a percentage, on a cumulative basis) between the actual amount of Disbursements of the Debtors during such Budget Test Period against the amount of Disbursements set forth in the Approved Budget for such Budget Test Period; and

    d. the actual amount of Professional Fees incurred by the Debtors from the Effective Date through the Budget Test Period most recently ended.

10. <u>Reporting Definitions</u>.  For the purposes of this Stipulation, the following capitalized terms shall have the following meanings:

    a. "<u>Approved Budget</u>" means, at any time, the Initial Approved Budget or the most recent Proposed Budget approved in writing by the Prepetition RBL Agent and, to the extent such Proposed Budget includes a reduction in any fees for any Committee professionals, consented to by the Committee, which consent shall not be unreasonably withheld.  From time to time (but not more than twice per month unless otherwise agreed by the Prepetition RBL Agent) the Borrower may provide to the Prepetition RBL Agent a proposed new cash flow projection and disbursements budget through the anticipated effective date of the Plan substantially similar in form to the Initial Approved Budget or in such other form as the Prepetition RBL Agent may agree in its reasonable discretion (any such proposed cash flow projection and disbursements budget, a "<u>Proposed Budget</u>").  To the extent any such Proposed Budget is approved in writing by the Prepetition RBL Agent in its reasonable discretion and consented to by the Committee, to the extent such Proposed Budget includes a reduction in any fees for any Committee professionals, which consent shall not be unreasonably

14

withheld, such Proposed Budget shall thereafter be the Approved Budget for such period contained therein and for all purposes hereunder. No such Proposed Budget shall become an Approved Budget until so approved in writing by the Prepetition RBL Agent in its reasonable discretion and consented to by the Committee, to the extent such Proposed Budget includes a reduction in any fees for any Committee professionals, which consent shall not be unreasonably withheld.

b. "<u>Budget Test Date</u>" means the Friday of each week.

c. "<u>Budget Test Period</u>" means, as of any Budget Test Date, the rolling four-week period ending on such Budget Test Date.

d. "<u>Carryover</u>" means, for any four-week period, with respect to Disbursements, the amount of any budgeted Disbursements not expended during such period (without giving effect to any Carryover of budgeted Disbursements from a prior period).

e. "<u>Disbursements</u>" means disbursements other than Professional Fees, adequate protection payments, distributions or escheatment of revenue on account of net revenue interests held by revenue interest partners and disbursements of pass-through revenue collected on behalf of Sequoyah Energy Holdings, LLC or any similar disbursements of pass-through revenue collected on behalf of other parties, or any disbursements to or made on behalf of and pre-approved by Contango pursuant to the terms of the Transition Services Agreement.

  f. "Professional Fees" means disbursements on account of fees and reimbursable expenses of professionals retained under section 327 or 1103(a) of the Bankruptcy Code.

  g. "Receipts" means (x) all cash, or other collections received from operations, other than any pass-through revenue collected on behalf of Sequoyah Energy Holdings, LLC or any similar collection of pass-through revenue on behalf of other parties, or any receipts collected on behalf of Contango pursuant to the terms of the Transition Services Agreement, minus (y) any revenue distributed or escheated on account of net revenue interests held by revenue interest partners.

11.  Approval. The Debtors shall immediately seek approval of this Stipulation pursuant to Rule 4001(b) and (d) of the Bankruptcy Rules. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The Parties consent to entry of final orders or judgments by this Court.

12.  Upon any termination or modification of the Debtors' right to use Cash Collateral as provided for in this Stipulation, the Debtors reserve all of their respective rights to seek the authority of the Court to use Cash Collateral, and the Prepetition RBL Agent reserves all of its rights to oppose any such request made by the Debtors.

13.  The parties hereto agree that the Court shall retain exclusive jurisdiction over the subject matter of this Stipulation to resolve any dispute in connection with the rights and duties specified hereunder.

14. The provisions of this Stipulation shall be binding upon and shall inure solely to the benefit of the Debtors, the Prepetition RBL Agent, their agents and their respective successors and assigns.

15. Each of the parties hereto represents and warrants that it has full power and authority to enter into this Stipulation subject to approval by the Court.

16. No provision of this Stipulation may be amended, modified, altered, or waived except in writing signed by the parties hereto or their duly authorized agents and approved by the Court.

17. Except as otherwise provided herein, nothing contained in this Stipulation shall be deemed or construed to waive, reduce or otherwise prejudice the rights of the Debtors, the Committee, the Prepetition RBL Agent or Prepetition RBL Lenders under, or with respect to, the Prepetition Loan Documents and the liens and security interests granted thereunder or in connection therewith.  Except as provided herein, each Party reserves all of its respective rights and remedies under applicable law.

Accepted and agreed to as of the twenty-fifth day of February 2020 by:

| | |
|---|---|
| */s/ John D. Dale* | */s/ Neal Tomlins* |
| John D. Dale, OBA No. 19787<br>GABLEGOTWALS<br>1100 ONEOK Plaza<br>100 West 5th Street<br>Tulsa, Oklahoma 74103-4217<br>Telephone: (918) 595-4800<br>Facsimile: (918) 595-4990<br>Email: jdale@gablelaw.com | Neal Tomlins, OBA No. 10499<br>TOMLINS & PETERS, PLLC<br>Southern Hills Tower Suite 305<br>2431 East 61st Street<br>Tulsa, Oklahoma 74136<br>Telephone: (918) 949-4411<br>Email: Neal@tplawtulsa.com |
| */s/ Craig M. Regens*<br><br>Craig M. Regens, OBA No. 22894<br>GABLEGOTWALS | Justin E. Rawlins (SBN: 209915)<br>PAUL HASTINGS LLP<br>515 South Flower Street, Twenty-Fifth Floor<br>Los Angeles, CA 90071 |

17

One Leadership Square  
211 North Robinson  
Oklahoma City, Oklahoma 73102  
Telephone: (405) 568-3313  
Facsimile: (405) 235-2875  
cregens@gablelaw.com  

Andrew G. Dietderich, NY Bar 2850584  
Brian D. Glueckstein, NY Bar 4227005  
Alexa J. Kranzley, NY Bar 4707386  
SULLIVAN & CROMWELL LLP  
125 Broad Street  
New York, New York 10004  
Telephone: (212) 558-4000  
Facsimile: (212) 558-3588  
dietdericha@sullcrom.com  
gluecksteinb@sullcrom.com  
kranzleya@sullcrom.com  

*Counsel for the Debtors*

Telephone: (213) 683-6130  
Email: justinrawlins@paulhastings.com  

*Counsel for MUFG Union Bank, N.A.*

SC1:5149575.3

**Exhibit A**

**Initial Approved Budget**

SC1:5149575.3

**White Star Petroleum, LLC**
Cash Stipulation Budget
Dated 2/7/20
($ in '000s)

| | 1/3 | 1/10 | 1/17 | 1/24 | 1/31 | 2/7 | 2/14 | 2/21 | 2/28 | 3/6 | 3/13 | 3/20 | 3/27 | 4/3 | 4/10 | 4/17 | WE 1/3 - 4/17 Budget Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | | | | |
| Other Receipts | $ - | $ 4 | $ - | $ - | $ - | $ - | $ - | $ 6,259 | $ 17 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 6,281 |
| **Total Cash Receipts** | - | 4 | - | - | - | - | - | 6,259 | 17 | - | - | - | - | - | - | - | 6,281 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | |
| *Employee Related:* | | | | | | | | | | | | | | | | | |
| Payroll - GA | (0) | (37) | - | (41) | (6) | (19) | - | (20) | - | (19) | - | (19) | - | (19) | - | (19) | (199) |
| Benefits - GA | (0) | (0) | - | - | (12) | (1) | (5) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (28) |
| **Total Employee Related** | (0) | (37) | - | (41) | (18) | (20) | (5) | (21) | (1) | (20) | (1) | (20) | (1) | (20) | (1) | (20) | (227) |
| *Non-Employee Related:* | | | | | | | | | | | | | | | | | |
| Lease Operating Expense | - | - | - | - | - | - | (70) | - | - | - | - | - | - | - | - | - | (76) |
| CapEx | - | - | - | - | - | (2) | - | - | - | (2) | - | - | - | (2) | - | - | (6) |
| Transportation Fees | - | - | - | - | - | (2) | - | - | - | (2) | - | - | - | (2) | - | - | (6) |
| Taxes/Fees | - | - | - | - | (7) | (2) | - | - | - | (2) | - | - | - | (2) | - | - | (13) |
| G&A Expense | (1) | (0) | - | (0) | (53) | (17) | (6) | (10) | (11) | (10) | (10) | (5) | (6) | (5) | (5) | (5) | (486) |
| Directors' Fees | (20) | - | - | - | - | (20) | (347) | - | - | (20) | - | - | - | (20) | - | (3) | (85) |
| Other | - | - | (0) | - | - | - | (3) | - | - | - | - | - | - | - | - | - | (8) |
| **Total Operating Disbursements** | (22) | (37) | (0) | (41) | (85) | (64) | (431) | (31) | (12) | (56) | (11) | (25) | (7) | (51) | (6) | (27) | (907) |
| **Net Operating Cash Flow** | (22) | (33) | (0) | (41) | (85) | (64) | (431) | 6,228 | 5 | (56) | (11) | (25) | (7) | (51) | (6) | (27) | 5,374 |
| **Ch. 11 Disbursements** | | | | | | | | | | | | | | | | | |
| Professional Fees | - | (15) | - | (96) | (1,331) | - | (178) | - | (2,174) | (1,610) | - | - | (1,794) | - | - | (200) | (7,398) |
| **Total Ch. 11 Disbursements** | - | (15) | - | (96) | (1,331) | - | (178) | - | (2,174) | (1,610) | - | - | (1,794) | - | - | (200) | (7,398) |
| **Cash Interest/Fees** | | | | | | | | | | | | | | | | | |
| DIP Cash Interest Payment | (42) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (42) |
| DIP Commitment Fee Payment | (10) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (10) |
| **Total Cash Interest/Fees** | (53) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (53) |
| **Net Cash Flow** | (74) | (48) | (0) | (137) | (1,416) | (64) | (610) | 6,228 | (2,168) | (1,667) | (11) | (25) | (1,801) | (51) | (6) | (227) | (2,077) |
| Beginning Cash (pre sale/plan/TSA) | 77,981 | 76,907 | 76,859 | 76,859 | 76,722 | 75,306 | 75,242 | 74,632 | 80,860 | 78,692 | 77,025 | 77,014 | 76,989 | 75,188 | 75,138 | 75,132 | 77,981 |
| Net Cash Flow | (74) | (48) | (0) | (137) | (1,416) | (64) | (610) | 6,228 | (2,168) | (1,667) | (11) | (25) | (1,801) | (51) | (6) | (227) | (2,077) |
| Borrowing / (Paydown) | (1,000) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (1,000) |
| Ending Cash (unrestricted) | 76,907 | 76,859 | 76,859 | 76,722 | 75,306 | 75,242 | 74,632 | 80,860 | 78,692 | 77,025 | 77,014 | 76,989 | 75,188 | 75,138 | 75,132 | 74,904 | 74,904 |
| Restricted Cash (Utility Deposit + LCs) | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 | 2,240 |
| **Total Cash** | $ 79,147 | $ 79,099 | $ 79,099 | $ 78,962 | $ 77,546 | $ 77,482 | $ 76,872 | $ 83,101 | $ 80,932 | $ 79,265 | $ 79,254 | $ 79,230 | $ 77,429 | $ 77,378 | $ 77,372 | $ 77,145 | $ 77,145 |

**Memo - Professional Fee Budget**

| Debtor Professionals | | RBL Professionals | | UCC Professionals | |
|---|---|---|---|---|---|
| Sullivan & Cromwell LLP | Counsel | 2,850,000 | Winston & Strawn LLP | Counsel | Morgan, Lewis & Bockius | Counsel | 400,000 |
| Alvarez & Marsal | Financial Advisor | 1,212,695 | RPA Advisors, LLC | Financial Advisor | Conway MacKenzie | Financial Advisor | 50,000 |
| GableGotwals | Local Counsel - OK | 525,000 | Tomlins & Peters | Local Counsel - OK | Conner & Winters | Local Counsel - OK | 50,000 |
| KCC | Claims Agent | 1,364,000 | | | | | |
| **Total Debtor Professionals** | | 5,951,695 | **Total RBL Professionals** | 1,415,000 | **Total UCC Professionals** | | 500,000 |

**Total Professional Fee Budget** 7,866,695

NOTE: Budgeted fees for the respective professionals can be carried forward for the forecast wind-down period.

SC1:5149575.3